A10A2289. BENEDICT v. STATE FARM BANK, FSB.
(709 SE2d 314)

BLACKWELL, Judge.

C. M. Benedict sued State Farm Bank, FSB, alleging in his complaint that State Farm representatives placed more than a

---

hundred harassing calls to his telephone number and asserting that this conduct amounts to a tort. State Farm moved to dismiss the complaint pursuant to OCGA § 9-11-12 (b) (6) because it failed, State Farm said, to state a claim upon which relief can be granted. State Farm also counterclaimed for the amount of an overdue credit card debt that Benedict owed to State Farm, as well as its attorney fees and costs of litigation, and State Farm moved to compel Benedict to arbitrate the counterclaim. The trial court granted both the motion to dismiss and the motion to compel arbitration, and after an arbitrator rendered an award in favor of State Farm on its counterclaim, the trial court confirmed the arbitration award and entered final judgment against Benedict. Benedict now appeals from this final judgment, and seeing no error, we affirm.

1. Benedict contends that the trial court erred when it dismissed his complaint against State Farm. We review de novo the dismissal of a complaint for failure to state a claim. *Southstar Energy Svcs. v. Ellison*, 286 Ga. 709, 710 (1) (691 SE2d 203) (2010). At a minimum, a complaint must contain "[a] short and plain statement of the claims showing that the pleader is entitled to relief," OCGA § 9-11-8 (a) (2) (A), and this short and plain statement must include enough detail to afford the defendant fair notice of the nature of the claim and a fair opportunity to frame a responsive pleading. See *Dillingham v. Doctors Clinic*, 236 Ga. 302, 303 (223 SE2d 625) (1976); see also *Patrick v. Verizon Directories Corp.*, 284 Ga. App. 123, 124 (643 SE2d 251) (2007). If a complaint gives the defendant fair notice of the nature of the claim, it should be dismissed for failure to state a claim only if, as our Supreme Court has explained, its allegations "disclose with certainty" that no set of facts consistent with the allegations could be proved that would entitle the plaintiff to the relief he seeks. See id. Put another way, "[i]f, within the framework of the complaint, evidence may be introduced which will sustain a grant of relief to the plaintiff, the complaint is sufficient." *Bourn v. Herring*, 225 Ga. 67, 70 (3) (166 SE2d 89) (1969). In assessing the sufficiency of the complaint, we view its allegations of fact in the light most favorable to the plaintiff. See *Southstar*, 286 Ga. at 710 (1).

So viewed, Benedict alleges that State Farm issued a credit card to him sometime in 2003 and that he used the credit card until July 2006, when he learned that State Farm intended to increase the rate of interest. Benedict failed to make a payment that was due to State Farm on July 20, 2006. On August 13, a representative of State Farm telephoned Benedict about the past due payment, and Benedict told this representative that he planned to pay off the outstanding balance of the credit card account in September. On August 20, a second State Farm representative telephoned Benedict, who again

said that he planned to pay off the outstanding balance soon. Benedict also told this representative not to call him again. According to Benedict, the representative responded that State Farm would not honor his request and would, in fact, telephone him as often as it liked.

Benedict claims that, between August 20 and September 6, State Farm representatives telephoned him from a "blocked number" on 168 occasions. Benedict says that these representatives "hung up the telephone" without speaking whenever he answered and did not leave any message whenever his answering service picked up the calls. Benedict does not say how many calls he answered, how many were picked up by his answering service, and how many went unanswered, and he does not allege the times at which the calls were placed. Benedict alleges that, as a result of these calls, he suffered $60,000 in "actual damages," but he does not say how exactly the making of these calls injured him.[1]

On State Farm's motion, the trial court concluded that these allegations fail to state a claim upon which relief can be granted and dismissed the complaint pursuant to OCGA § 9-11-12 (b) (6). On appeal, Benedict contends that his allegations are sufficient to state a claim for invasion of privacy or, in the alternative, for intentional infliction of emotional distress.[2] We disagree.

(a) We first examine whether Benedict has stated a claim for invasion of privacy upon which relief can be granted. More than 100 years ago, our Supreme Court recognized a private right of action for an invasion of privacy. See *Pavesich v. New England Life Ins. Co.*, 122 Ga. 190 (50 SE 68) (1905). Since then, the Supreme Court and this Court have identified four kinds of invasion of privacy for which a right of action exists, and among these is an intrusion upon the seclusion or solitude of a plaintiff or into his private affairs. See, e.g., *Yarbray v. Southern Bell Tel. &c. Co.*, 261 Ga. 703, 704-705 (1) (409 SE2d 835) (1991); *Udoinyion v. Re/Max of Atlanta*, 289 Ga. App. 580, 583 (657 SE2d 644) (2008); *Anderson v. Mergenhagen*, 283 Ga. App. 546, 549 (2) (642 SE2d 105) (2007); *Johnson v. Allen*, 272 Ga. App.

---

[1] Benedict does not allege, for instance, that these calls substantially burdened his existence or caused him severe emotional distress. The significance of the absence of such allegations is discussed below.

[2] We note that OCGA §§ 16-11-39.1 (a) and 46-5-21 (a) prohibit the making of harassing telephone calls in Georgia. We also note that 47 USC § 223 (a) (1) prohibits the making of harassing telephone calls in interstate or foreign communications. Benedict cited these statutes in his complaint, but when he responded to the motion to dismiss, he conceded that his tort claim against State Farm is not premised on a breach of any duties imposed by these statutes. And Benedict does not contend on appeal that he has any private right of action under these statutes. Consequently, we decide nothing in this case about the extent to which these statutes might entitle a recipient of harassing telephone calls to damages or other relief.

861, 863 (1) (613 SE2d 657) (2005); *Everett v. Goodloe*, 268 Ga. App. 536, 544 (2) (b) (602 SE2d 284) (2004); *Assn. Svcs. v. Smith*, 249 Ga. App. 629, 632 (2) (549 SE2d 454) (2001); *Johns v. Ridley*, 245 Ga. App. 710, 712 (2) (537 SE2d 746) (2000), reversed on other grounds, *Ridley v. Johns*, 274 Ga. 241 (552 SE2d 853) (2001); *Davis v. Emmis Publishing Corp.*, 244 Ga. App. 795, 797 (2) (536 SE2d 809) (2000); *Troncalli v. Jones*, 237 Ga. App. 10, 13 (2) (514 SE2d 478) (1999); *Jarrett v. Butts*, 190 Ga. App. 703, 704 (2) (379 SE2d 583) (1989); *Cabaniss v. Hipsley*, 114 Ga. App. 367, 370 (151 SE2d 496) (1966). To the extent that Benedict states any claim that is cognizable as an invasion of privacy, it is a claim for intrusion.[3] We think, however, that the conduct Benedict attributes to State Farm in this case is not actionable as an intrusion, and for this reason, he fails to state a claim upon which relief can be granted.

The Supreme Court has instructed that conduct actionable as an intrusion "involves a prying or intrusion, which would be offensive or objectionable to a reasonable person, into a person's private concerns," *Yarbray*, 261 Ga. at 705 (1), but a more precise definition of such a prying or intrusion remains somewhat elusive. For several years, our Court said that, "to state a claim under the 'unreasonable intrusion' tort, the plaintiff must allege a physical intrusion which is analogous to trespass." *Anderson*, 283 Ga. App. at 550 (2) (punctuation omitted); see also *Allen*, 272 Ga. App. at 864 (1); *Assn. Svcs.*, 249 Ga. App. at 632 (2); *Davis*, 244 Ga. App. at 797 (2). In more recent cases, we have adhered to the requirement of a "physical intrusion," but with the understanding "that this 'physical' requirement can be met by showing that the defendant conducted surveillance on the plaintiff or otherwise monitored her activities." *Anderson*, 283 Ga. App. at 550 (2). Benedict does not allege, however, that State Farm made any "physical intrusion which is analogous to trespass" or that State Farm "conducted surveillance on [Benedict] or otherwise monitored [his] activities."

Benedict instead alleges only that State Farm representatives placed repeated calls to his telephone number, not for any legitimate business purpose, but merely to harass, bother, and annoy him.[4] We

---

[3] The other recognized invasions of privacy for which a right of action exists are the public disclosure of embarrassing private facts, publicity that puts one in a false light, and the appropriation of one's name or likeness for the advantage of another. See *Cabaniss*, 114 Ga. App. at 370. Benedict does not say anything in his complaint about the public disclosure of embarrassing private facts, publicity casting him in a false light, or the misappropriation of his name or likeness. So, his claim for invasion of privacy—if it is cognizable at all under our precedents—must be one for intrusion upon his seclusion or solitude or into his private affairs. See *Yarbray*, 261 Ga. at 705 (1).

[4] In both *Udoinyion* and *Ridley*, we held that making repeated telephone calls, when the recipient has instructed the caller not to do so, is not an actionable intrusion. See *Udoinyion*,

do not doubt that such a pattern of conduct may be a substantial annoyance to the recipient of the calls and may disturb his peace and tranquility. But Benedict does not point us to any case—and we have not found any case—in which the Supreme Court or our Court has held that merely annoying someone or disturbing his peace or tranquility, without more, amounts to an actionable invasion of privacy. To the contrary, the cases in which we have found actionable intrusions involved visual surveillance of a plaintiff as she was engaged in her private affairs, *Anderson*, 283 Ga. App. at 552 (2), electronic surveillance of a plaintiff while she was in private places, *Allen*, 272 Ga. App. at 864 (1), physical trespasses upon private property, *Assn. Svcs.*, 249 Ga. App. at 632 (2),[5] or an unwanted, physical touching of the plaintiff, *Troncalli*, 237 Ga. App. at 14 (2). Because Benedict does not allege any conduct that is akin to surveillance, a physical trespass upon his property, or a physical touching of his person, we must conclude that Benedict fails to state a claim upon which relief can be granted under any of our intrusion precedents.

In an effort to avoid this conclusion, Benedict cites our statement in *Anderson* that "a relatively harmless activity can become tortious with repetition, as when, for example, telephone calls 'are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff,' and becoming 'a substantial burden to his existence.'" 283 Ga. App. at 552 (2) (quoting Restatement (Second) of Torts § 652B, comments c, d). We are not persuaded that *Anderson* requires a different result in this case. In the first place, *Anderson* involved visual surveillance—following the plaintiff about town and photographing her—and did not involve harassing telephone calls, so the statement on which Benedict relies is mere dicta. And in any event, even under the standard set out in the *Anderson* dicta, a plaintiff would be required to allege not only that the defendant made repeated telephone calls, but also that the calls

---

289 Ga. App. at 583-584; *Ridley*, 245 Ga. App. at 712. We acknowledge, however, that the telephone calls in *Udoinyion* and *Ridley* apparently were made for a legitimate business purpose. Because Benedict alleges that the State Farm calls had no legitimate business purpose, we do not find that this case is governed squarely by our holding in *Udoinyion* or *Ridley*.

[5] In addition to physical trespasses upon private property, there was evidence in *Assn. Svcs.* that the defendant-investigator made "at least seven 'pretext' telephone calls to [the plaintiff's] workplace." 249 Ga. App. at 632 (2). We do not think, however, that *Assn. Svcs.* requires us to find that Benedict has stated an actionable intrusion claim. The making of repeated telephone calls to gather private information about another by use of false pretenses—especially when it is part of a larger pattern that includes physical trespasses and visual surveillance—is itself akin to surveillance; the making of repeated telephone calls simply to harass another is not. The former may involve an intrusion into the private affairs of another, while the latter, at most, merely disturbs the peace and quiet of another.

became a "substantial burden to his existence." Benedict, however, does not allege that the telephone calls worked any particular injury, much less that they were a "substantial burden to his existence." Accordingly, even if repeated and harassing telephone calls might in some circumstances amount to an actionable intrusion—an issue that we need not, and do not, decide today—we still would conclude that Benedict fails to state a claim because his allegations do not give State Farm fair notice that he asserts such a claim for a "substantial burden to his existence." See *Ledford v. Meyer*, 249 Ga. 407, 408-409 (2) (290 SE2d 908) (1982) ("The true test [of a complaint] is whether the pleading gives fair notice and states the elements of the claim plainly and succinctly. . . .").

(b) We next examine whether Benedict has stated a claim for intentional infliction of emotional distress, but our consideration of this issue need not detain us long. A claim of intentional infliction requires conduct that is "of such serious import as to naturally give rise to such intense feelings of humiliation, embarrassment, fright or extreme outrage as to cause severe emotional distress." *Turnage v. Kasper*, 307 Ga. App. 172, 182 (1) (c) (704 SE2d 842) (2010) (citation and punctuation omitted); see also *Gordon v. Frost*, 193 Ga. App. 517, 521 (1) (388 SE2d 362) (1989). Although Benedict argued at the hearing on the motion to dismiss that his allegations were sufficient to plead intentional infliction, his complaint says nothing at all about humiliation, embarrassment, fright, extreme outrage, or severe emotional distress. To the contrary, the only allegations about the impact that Benedict felt from the repeated telephone calls are allegations that he was "repeatedly harassed" and that his privacy was "invaded continuously and repeatedly."[6] Such allegations do not give fair notice to State Farm of a claim for intentional infliction of emotional distress, and for this reason, Benedict fails to state a claim for intentional infliction upon which relief can be granted. See *Ledford*, 249 Ga. at 408 (2).

2. Benedict also contends that the trial court erred when it compelled him to arbitrate the counterclaim because, he says, State Farm failed to come forward with competent evidence that he, in fact, agreed to arbitrate his dispute with State Farm.[7] We review de

---

[6] After the hearing on the motion to dismiss, Benedict proffered an amended complaint, in which he explicitly alleged that State Farm's conduct was "deliberate, willful and intended to, and did, inflict mental distress upon the Plaintiff." But Benedict subsequently withdrew his amended complaint and elected to stand or fall upon the allegations in his original complaint. We, therefore, say nothing about whether the allegations in the amended complaint might state a claim upon which relief can be granted.

[7] Benedict also claims that the trial court erred when it confirmed the arbitration award, but only because the trial court, he says, never should have compelled him to arbitrate in the first place. Because Benedict offers no additional reason why the arbitration award should not

novo the grant of a motion to compel arbitration. *Tillman Park, LLC v. Dabbs-Williams Gen. Contractors*, 298 Ga. App. 27, 29 (679 SE2d 67) (2009). Arbitration is "a matter of consent, not coercion," *Volt Information Sciences v. Bd. of Trustees of Leland Stanford Junior University*, 489 U. S. 468, 479 (109 SC 1248, 103 LE2d 488) (1989), and a party can be compelled to arbitrate only upon a showing that he entered into an enforceable agreement to arbitrate. *Life Care Centers &c. v. Smith*, 298 Ga. App. 739, 741 (1) (681 SE2d 182) (2009). Here, we think there is sufficient evidence of the existence of an enforceable agreement between Benedict and State Farm to arbitrate, and for this reason, the trial court did not err when it compelled Benedict to arbitrate the counterclaim.

In support of its motion to compel arbitration, State Farm produced the version of its standard Credit Card Agreement and Disclosure Statement that was in use at the time a credit card was issued to Benedict, and this standard agreement includes a mandatory arbitration provision.[8] Benedict says that there is no competent evidence that State Farm ever sent this standard agreement to him, and there is, therefore, no evidence that he even had an opportunity to agree to its terms. State Farm, however, brought forward evidence that, at the time it issued a credit card to Benedict, its usual and customary business practice was to mail a newly issued credit card and a copy of the standard agreement to the cardholder in a single envelope. And an employee of State Farm having personal knowledge of this customary business practice stated in an affidavit that he believed the issuance of the credit card to Benedict conformed to this practice.[9] As our Court has explained before, such evidence of the customary business practices of an organization is admissible proof that the conduct of the organization on a particular occasion conformed to the practice. See *Wood v. First Nat. Bank &c.*, 167 Ga. App. 202, 203 (305 SE2d 852) (1983) ("Generally, a witness who has no distinct and independent recollection of the details of a fact occurring in the routine course of his business may testify to the fixed and uniform habit in such cases and state that he believes that

have been confirmed, the absence of error in compelling arbitration also resolves the claim of error in confirming the award.

[8] Benedict does not claim that the arbitration provisions of the agreement are not broad enough to encompass the counterclaim. He just says that he never accepted the terms of the agreement.

[9] Benedict disputes that this employee had personal knowledge of the customary practices at the time State Farm issued a credit card to him because, Benedict says, the affidavit reflects that the employee became employed with State Farm at a later date. Benedict, however, misreads the affidavit. The affidavit reflects that the employee came to hold his present position with State Farm at a later date. The affidavit recites that the employee has personal knowledge of the relevant customary practice, and nothing in the affidavit is inconsistent with such knowledge.

what was done in a given transaction was in accordance with habit.") (citations and punctuation omitted); see also *Baxter v. State*, 159 Ga. App. 632, 633 (2) (284 SE2d 649) (1981); *Continental Cas. Co. v. Wilson-Avery, Inc.*, 115 Ga. App. 793, 797 (5) (156 SE2d 152) (1967). Moreover, Benedict's claim that he had no knowledge of the Credit Card Agreement and Disclosure Statement—and could not, therefore, be bound by it—is contradicted by his own affidavit, to which he attaches a different document that he received from State Farm and that, he admits, sets forth some of the terms of his relationship with State Farm. This document, which appears to be an explanation of, among other things, how State Farm prepares its credit card bills, refers explicitly to "your Credit Card Agreement and Disclosure Statement."

In all, the evidence was enough to prove that Benedict was aware, when he received his credit card from State Farm, that his relationship with State Farm would be governed by the terms of the Credit Card Agreement and Disclosure Statement. And when Benedict subsequently activated and used his credit card, he accepted those terms. See *Davis v. Discover Bank*, 277 Ga. App. 864, 865-866 (627 SE2d 819) (2006) (bank not required to produce signed credit card agreement because agreement was accepted "when defendant retained the card and thereafter made use of it") (citations and punctuation omitted). For these reasons, the trial court did not err when it compelled Benedict to arbitrate the counterclaim.

*Judgment affirmed. Barnes, P. J., and Dillard, J., concur.*

DECIDED MARCH 22, 2011 —
RECONSIDERATION DENIED APRIL 6, 2011 — ▮▮▮▮▮▮▮

C. M. Benedict, *pro se.*
*Bryan, Cave, Powell & Goldstein, Adwoa G. Seymour, Lewis, Brisbois, Bisgaard & Smith, John C. Patton,* for appellee.