A11A1394. BUSH et al. v. BANK OF NEW YORK MELLON et al.
(720 SE2d 370)

BLACKWELL, Judge.

The court below concluded that Dwayne and Beverly Bush fail in their amended complaint to state any claim upon which relief can be granted,[1] and the court awarded judgment on the pleadings to one defendant and dismissed the others. The Bushes appeal, contending that they, in fact, state several claims upon which relief can be granted. Although we review de novo a determination that a pleading fails to state a claim upon which relief can be granted, *Sherman v. Fulton County Bd. of Assessors*, 288 Ga. 88, 89 (701 SE2d 472) (2010), we find ourselves unable in this case to undertake such a review because we cannot ascertain the precise nature of the claims that the Bushes assert, which we must do, of course, before we can determine whether relief can be granted upon those claims. The court below, we think, also was in no position to determine the extent to which the Bushes state a claim upon which relief can be granted, and before ruling upon the motions for judgment on the pleadings and to dismiss, it should have, we think, required the Bushes to replead and provide a more definite statement of their claims. We vacate the judgments below and remand for the court to do just that.[2]

Although the pleadings in this case are difficult in many respects to understand, we can discern that the Bushes borrowed nearly $800,000 from First Horizon Home Loan Corporation in February

---

[1] The Bushes brought this suit on behalf of themselves and the Bush Family Revocable Living Trust, of which they are trustees. For the sake of simplicity, we will refer to all the plaintiffs in this case as the "Bushes."

[2] Because we are remanding the case, we deny both the appellants' and appellees' motions for leave to file supplemental briefs in this Court.

2006, and in connection with this loan, they gave a promissory note and a security interest in their DeKalb County home to the lender. Several years later, in the second half of 2009, the Bushes filed a number of papers, some of which purport to cancel the security interest in their home, and some of which are utterly nonsensical, with the clerk of the Superior Court of DeKalb County and apparently sent copies of some of these papers to First Horizon, among others.[3] Around the same time, the Bushes defaulted, it seems, on their obligation to repay the loan, and in January 2010, the Bank of New York Mellon — to which the security interest in their home had been assigned in the meantime — notified the Bushes that it intended to foreclose upon the security interest.[4] The Bushes then sent a letter to First Horizon, in which they offered to pay more than $800,000 to First Horizon upon presentment of their original promissory note, and the Bushes allegedly deposited that amount with an "escrow agent" and notary public, who informed First Horizon that she was in receipt of those funds and would pay them over to First Horizon upon presentment of the original note.[5] First Horizon apparently did not accept this offer, and on February 23, 2010, the "escrow agent" executed an affidavit, in which she averred that First Horizon had not accepted the offer, that the chief executive officer of First Horizon "is now in DEFAULT without recourse," and that First Horizon and its agents had "agreed, by their actions, to Treble Damages separately and equally totaling $2,340,000.00." The next day, the Bushes, now represented by counsel, filed this lawsuit, naming the Bank of New York, its law firm, an agent of its law firm, the servicer of their loan, and a lawyer for the servicer as defendants.[6]

---

[3] These papers include a "Full Reconveyance" that purports to convey the security interest of First Horizon back to the Bushes, a "Notice of Right to Cancel" that purports to describe the rights of borrowers under the Truth in Lending Act, a "Notice of Removal" that purports to void the security deed that the Bushes gave to their lender, a "Notice of Revocation of Power of Attorney" that purports to rescind the security deed and note for fraud, a UCC financing statement that purports to reflect that Dwayne Bush has a security interest in all of his own property, an agreement by which Dwayne Bush promises to indemnify and hold himself harmless from any claims or judgments, and a notice to "All State, Federal and International Public Officials" that, although Dwayne Bush purports to be a sovereign citizen not subject to the jurisdiction of the United States, he claims all of his rights and privileges under various provisions of the United States Constitution and federal law.

[4] The sale apparently was set to occur on March 2, 2010.

[5] Just before sending this offer, the Bushes apparently also recorded a UCC financing statement that purports to reflect that Dwayne Bush has a security interest in various properties of First Horizon.

[6] Even after filing their lawsuit, the Bushes apparently continued to send bizarre papers to First Horizon and others, including a "Notice of Counterfeit Security and Other Violations of Federal Law, and Statement of Facts" dated March 4, 2010, in which Dwayne Bush invokes, among other things, the "Supplemental Rules of Admiralty, related to Specific Performance of

In their original complaint, the Bushes alleged that First Horizon had engaged in unspecified "[f]raudulent activities," that First Horizon had accepted a settlement and satisfaction of their loan pursuant to the terms of an unspecified notice dated September 3, 2009, that the Bushes had disputed their default in writing to First Horizon based on this settlement and satisfaction of their loan, that they subsequently offered more than $800,000 to First Horizon in satisfaction of their loan through their "escrow agent," that the assignment of the security interest in their home to the Bank of New York was not of record,[7] and that the Bushes had disputed in writing that they owed any obligation to the Bank of New York. Although the nature of the claims asserted in the original complaint is difficult to understand,[8] the original complaint appears to assert that one or more of the defendants violated the Fair Debt Collection Practices Act, 15 USC § 1692 et seq., the Real Estate Settlement Procedures Act of 1974, 12 USC § 2601 et seq., the Georgia Commercial Code, OCGA § 11-3-603, the statutory requirement that an assignment of a security deed must be recorded before the assignee can exercise its power of sale, OCGA § 44-14-162 (b), and the settlement and satisfaction to which First Horizon allegedly had agreed. In their original complaint, the Bushes sought an injunction against the foreclosure of their home and an order compelling First Horizon, which was not named as a defendant, to produce the original promissory note and accept their tender of $800,000 in satisfaction of the loan. A few days later, the court below entered a temporary restraining order, which enjoined the defendants from foreclosing the security deed.

Each of the named defendants filed an answer to the original complaint, and the Bank of New York counterclaimed, seeking an order striking the various papers that the Bushes had filed in the real property records of DeKalb County, an injunction against the Bushes filing any additional papers that purport to unilaterally cancel their security deed, a declaratory judgment that the security deed remains valid and that the Bank of New York has a right to foreclose it, and litigation expenses under OCGA §§ 9-15-14 and 13-6-11. In addition, the defendants other than the Bank of New York moved to dismiss the complaint for failure to state a claim upon which relief can be

---

International Treaties, Contracts, [and] Constitutional Fiduciary Duty," the First, Fourth, Fifth, Sixth and Ninth Amendments to the United States Constitution, the Hague Convention of 1961, the Fair Debt Collection Practices Act, the Truth in Lending Act, and the Real Estate Settlement Procedures Act.

[7] The record shows that the assignment is dated December 2009 but was not recorded in the real property records of DeKalb County until March 2010.

[8] We do not even know how many claims the Bushes intended to assert in their original complaint because it contains no distinct counts.

granted, contending that any claims asserted in the original complaint were properly directed to the Bank of New York, not the other defendants. In response, the Bushes filed a "Motion for Declaratory Judgment," in which they sought — in addition to the relief for which they prayed in their original complaint — a declaratory judgment that they have clear title to their home, that the rejection of their tender of more than $800,000 through an escrow agent amounts to a violation of OCGA § 11-3-603 by the servicer and its lawyer, and that the lawyer for the servicer has engaged in "a scheme or artifice to deprive another of the intangible right of honest services" under 18 USC § 1346 and has violated OCGA § 10-5A-6, which pertains to commodity contracts and options. The Bushes also amended their complaint.

The amended complaint, like the original complaint, is difficult to understand. It consists of 133 numbered paragraphs and asserts claims in 17 distinct counts,[9] and it incorporates 60 paragraphs of the original complaint, as well as seven paragraphs of the "Motion for Declaratory Judgment" that the Bushes had filed earlier, so it also asserts, it seems, whatever claims were asserted in those earlier filings. In addition, it incorporates numerous exhibits by reference, including several of the papers that the Bushes apparently sent to First Horizon in 2009. Each count, except the first, purports to incorporate all of the preceding counts, some counts appear to assert multiple legal claims within a single count,[10] and some counts seem to be based on allegations of fraud that are vague and nonspecific. We cannot understand many of the claims that the Bushes assert in their amended complaint, but the Bushes mention a number of

---

[9] Of these counts, 16 are enumerated, and an additional unnumbered count, entitled "Suit for Quiet Title to Land," appears near the end of the amended complaint. The enumerated counts are captioned "Declaratory Relief (Due to Plaintiffs['] legal offer of tender)," "Tortious Inference [sic] with Contract and Dishonor in Commerce," "Declaratory Relief (Due to improper securitization of Plaintiffs['] promissory note)," "Slander of Title," "Fraud Theft by Deception," "Counterfeiting a Security," "Wrongful Foreclosure," "Fraud in the Inducement," "Theft by Deception," "Declaratory Relief (due to tacit agreement to terms of settlement and satisfaction)," "Breach of Contract," "Fair Debt Collection Act," "Criminal Enterprise," "Breach of Statutory Duty," "Civil RICO," and "Punitive Damage."

[10] Count II, for instance, perhaps asserts claims for mail fraud to deprive Dwayne Bush of the intangible right to honest services under 18 USC § 1346 and for fraudulent or deceitful acts with respect to commodities contracts and options in violation of OCGA § 10-5A-6. Count X appears to seek a declaratory judgment based on, among other things, the Real Estate Settlement Procedures Act, the Fair Debt Collection Practices Act, the Truth in Lending Act, 15 USC § 1601 et seq., and the alleged 2009 settlement and satisfaction. Count XI seems to assert ten distinct claims for breach of contract. Count XIII asserts claims under both the federal Racketeer Influenced and Corrupt Organizations Act, 18 USC § 1961 et seq., and the Georgia Racketeer Influenced and Corrupt Organizations Act, OCGA § 16-14-1 et seq., and Count XV appears to assert a claim under one or both of these statutes, although it mentions neither.

statutes and legal theories[11] in the amended complaint, including that their obligations to repay the loan were discharged by tender under OCGA § 11-3-603, that they reached a settlement and accord and satisfaction of their indebtedness with First Horizon, that they have a right to rescind their loan under the Truth in Lending Act, that the defendants committed mostly unspecified acts of fraud, that they have been subjected to "peonage and usury," that their loan agreement shows a lack of mutuality, that the Bank of New York has no right to exercise a power of sale under the security deed because it does not also hold the promissory note, that the defendants have failed to provide certain documentation under the Real Estate Settlement Procedures Act, that the defendants have violated the Fair Debt Collection Practices Act, and that the defendants have violated the federal and Georgia Racketeer Influenced and Corrupt Organizations Acts. We cannot say whether the Bushes intended to actually assert claims based on each of these statutes and legal theories, but we suppose that they might have so intended. In any event, based on whatever claims they assert, the Bushes seek $5 million in compensatory damages, $10 million in punitive damages, the compelled production of their original promissory note, an injunction against the foreclosure of the security deed, and a declaratory judgment that the Bank of New York has no right to foreclose the security deed and that their obligation to repay the loan has been discharged or resolved by settlement or accord and satisfaction.

The Bank of New York moved for judgment on the pleadings as to the claims that the Bushes asserted against it, contending that every claim in the amended complaint is based on the notion that the tender of more than $800,000 by the "escrow agent" on behalf of the Bushes discharges their obligation to repay the loan under OCGA § 11-3-603. That notion is wrong, the Bank of New York said, because the Georgia Commercial Code, of which OCGA § 11-3-603 is a part, does not apply to transactions involving real estate and because no one made an unconditional tender of any amount to a person entitled to enforce the promissory note, as OCGA § 11-3-603 requires. The court below granted the motion of the other defendants to dismiss without explanation, and the court granted the motion of the Bank of New York for judgment on the pleadings, finding that the Bushes fail to state a claim under OCGA § 11-3-603 and that none of their claims, as a result, states a claim upon which relief can be granted.

---

[11] Some of these statutes may have no application in this case, and some of the legal theories are novel and untested. We do not mean to suggest that the Bushes have, in fact, stated a claim under any of these statutes or legal theories.

The court also granted judgment on the pleadings to the Bank of New York on its counterclaim, although the Bank had not moved for it, and the court struck the papers that the Bushes had filed in the real property records, enjoined them from filing additional papers that pertain to their home, and declared that the security deed is valid. The Bushes appeal from these judgments, contending that they do state a claim for discharge under OCGA § 11-3-603 and that, in any event, they assert many claims that do not depend upon the merit of their claim for discharge.[12]

A complaint fails to state a claim upon which relief can be granted and warrants dismissal or judgment on the pleadings "only if . . . its allegations 'disclose with certainty' that no set of facts consistent with the allegations could be proved that would entitle the plaintiff to the relief he seeks." *Benedict v. State Farm Bank, FSB*, 309 Ga. App. 133, 134 (1) (709 SE2d 314) (2011) (citation omitted). "Put another way, 'if, within the framework of the complaint, evidence may be introduced which will sustain a grant of relief to the plaintiff, the complaint is sufficient.' " Id. (citation and punctuation omitted). Like the court below, when we assess the sufficiency of the complaint on appeal, we must accept the allegations of fact that appear in the complaint and view those allegations in the light most favorable to the plaintiff. See id. Before any court can undertake to decide, however, whether a complaint states a claim upon which relief can be granted, the court must be able to understand the nature of the claims that the complaint asserts. In this case, we cannot ascertain the nature of the claims that the Bushes seek to assert from their amended complaint, and we do not understand how the court below could have ascertained the nature of their claims. What, then, is a trial court to do when confronted with such a complaint?

The answer, we think, is that the trial court should require the plaintiff to amend his complaint and provide a more definite statement of his claims. A complaint must contain "[a] short and plain statement of the claims showing that the pleader is entitled to relief," OCGA § 9-11-8 (a) (2) (A), and as we have explained before, "this short and plain statement must include enough detail to afford the defendant fair notice of the nature of the claim and a fair

---

[12] The Bushes also had filed a motion to add First Horizon as a defendant, which the court below also denied, in part because the addition of First Horizon would be futile, the court said, inasmuch as the Bushes state no claim against any other defendant. The Bushes also appeal from the denial of this motion, and because it was based in part on the determination that the Bushes fail to state a claim upon which relief can be granted — a determination that was, as we explain below, premature — we vacate the denial of the motion to add First Horizon as a defendant.

opportunity to frame a responsive pleading." *Benedict*, 309 Ga. App. at 134 (1). "Each averment of a pleading shall be simple, concise, and direct," OCGA § 9-11-8 (e) (1), and although alternative theories of a single claim can be pled in a single count, OCGA § 9-11-8 (e) (2), distinct claims must be pled in distinct counts, at least to the extent that "a separation facilitates the clear presentation of the matters set forth." OCGA § 9-11-10 (b). Moreover, although most elements of most claims can be pled in general terms, so long as they give fair notice of the nature of the claims to the defendant, all allegations of fraud "shall be stated with particularity." OCGA § 9-11-9 (b). The pleading requirements of the Civil Practice Act are *requirements*, not just suggestions. But as our Supreme Court has instructed, when a plaintiff fails to conform to these requirements, the proper remedy is a more definite statement, not a dismissal of the complaint or judgment on the pleadings, at least so long as the plaintiff is able and willing to amend his pleadings to conform to the statutory requirements. *Hall v. Churchwell's, Inc.*, 243 Ga. 852, 853 (257 SE2d 272) (1979). See also *Estate of Shannon v. Ahmed*, 304 Ga. App. 380, 384 (1) (696 SE2d 408) (2010); *TechBios, Inc. v. Champagne*, 301 Ga. App. 592, 594 (1) (a) (688 SE2d 378) (2009); *Roberts v. Nessim*, 297 Ga. App. 278, 284-285 (2) (676 SE2d 734) (2009).

The amended complaint in this case is not a "short and plain statement" of the claims that the Bushes assert, it does not give the defendants fair notice of the nature of these claims, and it does not conform to several of the specific pleading requirements of the Civil Practice Act. The amended complaint here is, instead, what many courts have described as a "shotgun pleading." The Eleventh Circuit has addressed shotgun pleadings on many occasions, see *Davis v. Coca-Cola Bottling Co. Consolidated*, 516 F3d 955, 979, n. 54 (VI) (A) (11th Cir. 2008), and we find some guidance in the decisions of that court.[13] Although the concept of a shotgun pleading is not one susceptible of a terse definition, the Eleventh Circuit has identified several characteristics that typically mark such pleadings. A shotgun complaint, for instance, often "contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts . . . contain irrelevant factual

---

[13] We recognize that the pleading standards in a Georgia court and in a federal court may not be identical. Compare *Battle v. Seago*, 208 Ga. App. 516, 516 (431 SE2d 148) (1993) (applying "no set of facts" pleading standard, taken from *Conley v. Gibson*, 355 U. S. 41 (78 SC 99, 2 LE2d 80) (1957)), with *Bell Atlantic Corp. v. Twombly*, 550 U. S. 544, 562-563 (II) (B) (127 SC 1955, 167 LE2d 929) (2007) (rejecting "no set of facts" pleading standard). But a complaint filed in either court must contain "a short and plain statement" of the claim and must give the defendant fair notice of the nature of the claims against which he must defend. That is precisely what shotgun complaints fail to do, and for this reason, we find the federal cases about shotgun pleadings instructive.

allegations and legal conclusions," *Strategic Income Fund v. Spear, Leeds & Kellogg Corp.*, 305 F3d 1293, 1295 (II) (11th Cir. 2002), combines "multiple claims together in one count," *Ledford v. Peeples*, 568 F3d 1258, 1278 (II) (B) (1) (11th Cir. 2009), and buries material allegations "beneath innumerable pages of rambling irrelevancies."[14] *Magluta v. Samples*, 256 F3d 1282, 1284 (IV) (11th Cir. 2001). The amended complaint bears these marks of a shotgun pleading.

Such pleadings not only harm the litigants who must answer them, but they "harm the court by impeding its ability to administer justice." *Byrne v. Nezhat*, 261 F3d 1075, 1131 (IV) (B) (11th Cir. 2001). As evidenced by the time we have spent in this case, and the efforts of the court below, to try to understand the nature of the claims that the Bushes assert in their amended complaint, "[c]ases framed by shotgun pleadings consume an inordinate amount of a court's time. As a result, justice is delayed, if not denied, for litigants who are standing in the queue waiting to be heard." Id. at 1130 (IV) (B). The burden of clearly identifying the claims alleged in a case should not lie with the defendants or the courts; it should lie with the plaintiff, who has an obligation under the Civil Practice Act to make a "short and plain statement" of his claim.[15]

In light of the harm that shotgun pleadings do to the administration of justice, the Eleventh Circuit has said that, when confronted with a shotgun complaint, a trial court should order the plaintiff to give a more definite statement of his claims, even if the defendant does not ask for one. *Byrne*, 261 F3d at 1133 (IV) (D). At least to the extent that a trial court is called upon to determine whether a complaint states a claim upon which relief can be granted but cannot because the complaint fails to comply with the pleading requirements and is too confusing, the approach of the Eleventh Circuit is, we think, the right one. To determine whether a complaint states a claim upon which relief can be granted, a court first, as we have explained, must identify the nature of the claims asserted, and in the case of a shotgun complaint, that task almost always will require an inordinate commitment of judicial time and resources, and it sometimes will prove impossible. Requiring the plaintiff to make a more definite statement of his claim saves judicial resources

---

[14] Shotgun complaints also sometimes "mak[e] no distinction among the [many] defendants charged, though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of." *Magluta*, 256 F3d at 1284 (IV). That is not a problem, however, with the amended complaint in this case, which seems to adequately identify which defendant or nonparty is alleged to have done the particular acts that form the basis for the claims.

[15] We are dealing here with a shotgun complaint, but an answer also can be filed in shotgun fashion, and it is not just plaintiffs that sometimes file improper shotgun pleadings.

and permits the court, when a sufficiently more definite statement has been pled, to determine whether the complaint states a claim by applying the usual standards for the legal adequacy of a complaint. Although the Civil Practice Act does not expressly authorize a court to order a more definite statement in the absence of a motion, see OCGA § 9-11-12 (e), we see no reason that a court cannot do so as an exercise of its inherent powers to manage its docket and to compel compliance with the rules and requirements of civil procedure. See *Bayless v. Bayless*, 280 Ga. 153, 155 (1) (625 SE2d 741) (2006) (acknowledging inherent powers of trial courts); *Truitt v. Housing Auth. of Augusta*, 235 Ga. App. 92, 94 (507 SE2d 781) (1998) (same).

When a trial court orders a plaintiff to make a more definite statement of his claims, the court should, we think, identify the ways in which the complaint fails to conform to the pleading requirements of the Civil Practice Act, and the court also should warn the plaintiff about the potential consequences of a failure to replead in a way that conforms to these requirements. A plaintiff may not always get it quite right in his first attempt to replead, and if the court still cannot ascertain the nature of the claims that the plaintiff seeks to assert, the court may enter another order to replead again. But the trial court and the defendants need not become caught in an endless cycle of attempts to replead,[16] and if it appears that a plaintiff is unable or unwilling to plead in conformance to the Civil Practice Act and the directions of the court, the court may be authorized in some cases to dismiss the complaint, not for a failure to state a claim, but for disregard of the rules and orders of the court. See, e.g., OCGA § 9-11-41 (b) ("For failure of the plaintiff to . . . comply with [the Civil Practice Act] or any order of court, a defendant may move for dismissal of an action or of any claim against him."); *Byrne*, 261 F3d at 1133 (IV) (D) ("Implicit in [an instruction to make a more definite statement] is the notion that if the plaintiff fails to comply with the court's order — by filing a repleader with the same deficiency — the court should strike his pleading or, depending on the circumstances, dismiss his case and consider the imposition of monetary sanctions.").

In this case, we cannot ascertain the nature of the claims that the Bushes seek to assert in their amended complaint, and we do not

---

[16] There is some danger, of course, that a defendant may be put to unnecessary expense and trouble or otherwise prejudiced if the assessment of the legal sufficiency of the complaint is prolonged indefinitely, but we are confident that the trial courts have sufficient discretion and authority to ameliorate any harm to a defendant. See, e.g., OCGA § 9-11-26 (c) (*protective orders*); OCGA § 9-11-65 (a) (interlocutory injunctions); Uniform Superior Court Rule 5.1 (court may alter timing of discovery); Uniform Superior Court Rule 6.2 (court may defer obligation of party to respond to motions).

think the court below was in any better position to do so.[17] Consequently, the court below should have required the Bushes to amend their pleadings again and to make a more definite statement of their claims before passing upon the motions to dismiss and for judgment on the pleadings. We vacate the judgments below,[18] and we remand for the court below to require the Bushes to replead and make a more definite statement of their claims. When the Bushes have filed a complaint from which the court below can ascertain the nature of their claims, the court then should reconsider whether the Bushes state a claim against any of the defendants upon which relief can be granted and conduct such other and further proceedings as are appropriate.

*Judgments vacated and case remanded with direction. Barnes, P. J., and Adams, J., concur.*

DECIDED NOVEMBER 30, 2011.

*Louise T. Hornsby*, for appellants.
*McCalla Raymer, Jimmy T. Howell, Jr., Steven J. Flynn*, for appellees.

---

[17] We are not unsympathetic to the trial judge, who found herself confronted with an unusually confusing complaint, as well as numerous other irregular filings, which together form a record that is especially voluminous for a case that has not yet proceeded past the pleadings stage. The trial judge devoted substantial time and resources to a resolution of this case, and the judge prepared a thorough and reasoned order on the motion for judgment on the pleadings. We think, however, that the trial court should not have attempted to guess the nature of the various claims that the Bushes seek to assert, but instead should have ordered the Bushes to clarify the nature of their claims by making a more definite statement. We acknowledge that our decision will require the trial judge and defendants in this particular case to expend more time and resources addressing the pleadings of the Bushes. But the approach we require today will in most cases save the courts and the defendants considerable time, we think, by requiring plaintiffs to clearly state the nature of their claims before anyone undertakes to assess the legal sufficiency of the complaint.

[18] More specifically, we vacate the order granting judgment on the pleadings to the Bank of New York on the claims that the Bushes assert against it, the order dismissing the other defendants, and the order denying leave to add First Horizon as a party, all of which were based, in whole or in part, on the conclusion that the Bushes fail to state a claim upon which relief can be granted. We also vacate the order granting judgment on the pleadings to the Bank of New York on its counterclaim, inasmuch as the merit of the counterclaim depends, at least in some respects, on the merit of the claims that the Bushes may be attempting to assert in their complaint.