**THIRD DIVISION**
**MIKELL, P. J.,**
**MILLER and BLACKWELL, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**July 9, 2012**

# In the Court of Appeals of Georgia

A12A0427. GREEN v. FLANAGAN.

BLACKWELL, Judge.

In the summer of 2006, Johanna Flanagan was employed with PharmaCentra, LLC, and Barry Green was her supervisor. According to Flanagan,[1] Green behaved badly that summer—talking inappropriately about sex, touching her inappropriately, and attempting repeatedly to turn their work relationship into a more intimate one, something in which Flanagan had no interest —and when she complained about his

---

[1] This case comes to us at the pleadings stage, following the denial of a motion to dismiss, and for the purposes of this appeal, we must accept the truth of any allegations of fact set out in the complaint. *Bush v. Bank of N.Y. Mellon*, 313 Ga. App. 84, 89 (720 SE2d 370) (2011); see also *Benedict v. State Farm Bank, FSB*, 309 Ga. App. 133, 134 (1) (709 SE2d 314) (2011). Accordingly, the "facts" set out in this opinion are only allegations and have yet to be proven. See *Speedway Motorsports, Inc. v. Pinnacle Bank*, ___ Ga. App. ___, n.3 (Case No. A11A2350, decided Mar. 29, 2012).

boorish behavior, she lost her job. A little more than a year later, Flanagan sued PharmaCentra and Green in the Superior Court of Fulton County,[2] asserting claims against Green under Georgia law for assault, battery, intentional infliction of emotional distress, and breach of her employment agreement with PharmaCentra.[3] That lawsuit was removed to federal district court, see 28 USC § 1441 et seq., where PharmaCentra moved to compel Flanagan to submit her claims to binding arbitration, pursuant to the arbitration provisions of her employment agreement.[4] The federal court granted that motion, Flanagan took her claims against both PharmaCentra and Green to arbitration, and her lawsuit was dismissed or, at the least, discontinued.[5]

---

[2] In addition, Flanagan named Concentra Solutions, Inc. as a defendant, alleging that it and PharmaCentra are one and the same, and she also named another PharmaCentra employee as a defendant. Her claims against PharmaCentra, Concentra, and this other employee, however, are not at issue in this appeal, and it is not necessary for us to distinguish between them. So, for the sake of simplicity, we refer to them collectively as "PharmaCentra."

[3] Flanagan also asserted claims against Green for punitive damages and attorney fees, but those claims are necessarily derivative of her tort claims, and they stand or fall with the tort claims. See *Wright v. Apartment Investment & Mgmt.*, ___ Ga. App. ___ (1) (a), n.6 (Case No. A11A2227, decided Mar. 29, 2012).

[4] Green adopted the motion of PharmaCentra to compel arbitration.

[5] The precise date upon which the lawsuit was dismissed or discontinued is a little unclear to us, but we know that it was dismissed or discontinued by August 2009. In its motion to compel arbitration, PharmaCentra asked the federal court to

Flanagan eventually settled her claims against PharmaCentra, and she voluntarily dismissed PharmaCentra from the arbitration proceedings. PharmaCentra, however, had been responsible for the arbitration fees, and Flanagan evidently made no provision in the settlement agreement for PharmaCentra to pay the fees necessary for her to continue the arbitration against Green. After PharmaCentra was dismissed, neither Flanagan nor Green was willing to pay those fees, and so in April 2010, the arbitrator dismissed the arbitration altogether, with Flanagan consenting to the dismissal.

Within six months after the dismissal of the arbitration proceedings—but more than six months after her lawsuit in federal court had been dismissed or discontinued—Flanagan filed a second lawsuit against Green, this time in the State

"compel [Flanagan] to submit to arbitration and dismiss her claims." The court granted that motion in April 2008 without reservation, albeit also without any explicit statement that the lawsuit was dismissed. Because the federal court appears to have granted the motion to compel in full, and because it did not expressly reserve the question of dismissal when it granted the motion, we suppose that the lawsuit was, in fact, dismissed as of April 2008. But in any event, Flanagan thereafter went to arbitration, and it appears that she discontinued her efforts to prosecute her claims in court. Moreover, in August 2009, the federal court ordered its clerk to "administratively close" the lawsuit, noting that the court previously had granted the motion to compel arbitration. Although Flanagan later moved the federal court to "reopen" the lawsuit, the federal court denied that motion as "untimely." For the purposes of this appeal, we accept that the lawsuit in federal court was dismissed or discontinued no later than August 2009.

3

Court of Cherokee County, reasserting the claims that she had pressed against him in her earlier lawsuit and in arbitration. By the time Flanagan filed her second lawsuit, the statutory period of limitation for her tort claims against Green had run, see OCGA § 9-3-33, and so he moved to dismiss those claims as untimely. In response, Flanagan pointed to the Georgia renewal statute, OCGA § 9-2-61 (a), which provides that, "[w]hen any case has been commenced in either a state or federal court within the applicable statute of limitations and the plaintiff discontinues or dismisses the same, it may be recommenced . . . within six months after the discontinuance or dismissal," even though the statutory period of limitation has run in the meantime. Under the renewal statute, the second lawsuit was timely filed, Flanagan said, because it was filed within six months after the dismissal of the arbitration. Green also moved to dismiss the contract claim under OCGA § 9-11-12 (b) (6) for failure to state a claim upon which relief might properly be granted, arguing that he was not a party to any contract with Flanagan. The court below denied the motion to dismiss in its entirety, and we allowed Green to take an interlocutory appeal. We now conclude that the court below should have dismissed the second lawsuit, and we reverse the judgment below.

1. As he did below, Green argues on appeal that the tort claims are barred by the statute of limitation, and he says that the renewal statute does not save those claims because the second lawsuit was not filed within six months of the dismissal or discontinuation of the earlier lawsuit in federal court. We agree. The plain terms of the renewal statute speak of the discontinuation or dismissal of a "case [that] has been commenced in either a state or federal court," OCGA § 9-2-61 (a), and in its ordinary usage, "case" generally is understood to refer to "[a] *judicial* proceeding for the determination of a controversy between parties wherein rights are enforced or protected, or wrongs are prevented or redressed." BLACK'S LAW DICTIONARY at 215 (6th ed. 1990) (emphasis supplied). Consistent with the ordinary usage, this Court has explained that the renewal statute allows the renewal within six months of any "*judicial* proceeding [in which the plaintiff seeks] to assert his right and enforce his remedy." *Ludi v. Van Metre*, 221 Ga. App. 479, 481 (2) (471 SE2d 913) (1996) (emphasis supplied). See also *Hardin Constr. Group v. Fuller Enterprises*, 233 Ga. App. 717, 721 (1) (505 SE2d 755) (1998) (physical precedent only). Arbitration is not a judicial proceeding, of course; it is an alternative to a judicial proceeding.[6]

_____

[6] Notably, the Georgia Arbitration Code does not refer to a "case" being submitted to arbitration. Rather, it speaks of "disputes," "controversies," "claims," "issues," and "matters" in arbitration. See, e.g., OCGA §§ 9-9-2 (c) (Georgia

5

Although we find no Georgia cases specifically concerning whether an arbitration is a proceeding that can be renewed under the renewal statute, we do find decisions by Georgia courts that suggest that official, quasi-judicial proceedings do not properly form the basis for a renewal under OCGA § 9-2-61. See, e.g., *Gordy v. Callaway Mills Co.*, 111 Ga. App. 798, 800 (143 SE2d 401) (1965) (administrative proceedings before State Board of Workers Compensation); *Ivey v. DeKalb Co. Dept. of Public Safety*, 668 F. Supp. 1579, 1581 (N.D. Ga. 1987) (not citing renewal statute, but failing to find "any section in the Georgia Code which provides that the two-year limitations period under [OCGA] § 9-3-33 is tolled during the period in which a plaintiff appeals an employment termination decision [in an administrative proceeding]"). In light of these precedents, and in light of the plain language of the

Arbitration Code applies to "disputes in which the parties thereto have agreed in writing to arbitrate"); 9-9-3 ("agreement to submit any existing controversy to arbitration" and "contract to submit any controversy thereafter arising to arbitration"); 9-9-4 (d) ("claim with respect to which arbitration is sought"); 9-9-4 (e) ("arbitrable controversy"); 9-9-5 (a) ("claim sought to be arbitrated"); 9-9-6 (a) ("issue claimed to be arbitrable"); 9-9-6 (c) (4) ("the dispute or controversy sought to be arbitrated"); 9-9-6 (e) (2) ("disputes"); 9-9-6 (f) ("matters to be heard before the arbitrator, panel, or tribunal"); 9-9-8 (b) ("arbitrators may hear and determine the controversy"); 9-9-8 (d) ("the hearing and determination of the controversy"); 9-9-11 (a) (2) ("arbitrators have awarded upon a matter not submitted to them"); 9-9-11 (a) (3) ("the merits of the controversy"); 9-9-13 (b) (3) ("the subject matter submitted"); 9-9-13 (c) (4) ("[t]he arbitrated claim"); 9-9-13 (e) ("issues"); 9-9-14 (b) (2) ("a matter not submitted"); 9-9-14 (b) (3) ("the controversy").

renewal statute, we conclude that an arbitration is not a proceeding that properly can be renewed within six months of its dismissal or discontinuation pursuant to OCGA § 9-2-61.

Such a conclusion, Flanagan argues, is terribly unfair, inasmuch as she was compelled to go to arbitration, and the arbitration was dismissed only because fees for which she was not responsible were not paid. We are not convinced, however, of the unfairness of this outcome. In the first place, Flanagan could have insisted that the federal court stay her lawsuit during the pendency of arbitration, see *Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 699 (I) (11th Cir. 1992), such that a "case" capable of renewal would remain pending in court until the arbitration was concluded, but she apparently did not. Even after her lawsuit was dismissed or discontinued, Flanagan could have insisted in her settlement with PharmaCentra that it pay the fees necessary for her to continue the arbitration against Green, but she evidently did not. It was Flanagan who let PharmaCentra out of the arbitration without securing the payment of fees that PharmaCentra was obligated to pay, and so it is her own fault that she was unable to obtain a resolution of her claims against Green in arbitration. Consequently, the court below should have dismissed the tort

claims that Flanagan asserts against Green, as well as her derivative claims for punitive damages and attorney fees.

2. About the contract claim, Green argues that it should be dismissed because the contract upon which it is premised is the employment agreement between Flanagan and PharmaCentra, and he is not a party to that contract. We agree. Flanagan does not dispute that her contract claim against Green is premised on her employment agreement with PharmaCentra, nor does she dispute that Green is not a party to that agreement. The officers and employees of a limited liability company (like PharmaCentra) ordinarily have no personal liability for the contractual obligations of the company, see *Milk v. Total Pay & HR Solutions, Inc.*, 280 Ga. App. 449, 452-453 (634 SE2d 208) (2006), and generally speaking, "a person who is not a party to a contract is not bound by its terms." *Accurate Printers, Inc. v. Stark*, 295 Ga. App. 172, 178 (3) (a) (671 SE2d 228) (2008) (citation and punctuation omitted). Even if, as Flanagan contends on appeal, Green is a third-party beneficiary of the arbitration provision of her employment agreement, we are aware of no authority—and Flanagan points us to none—for the proposition that a third-party beneficiary of a contract can be sued for damages for its breach. Flanagan fails to

8

state a claim against Green for breach of contract, and her contractual claim also should have been dismissed.

For these reasons, we reverse the judgment below, and we remand for the court below to dismiss this case.

*Judgment reversed, and case remanded with instruction. Mikell, P.J., and Miller, J., concur.*

9