**SECOND DIVISION
MILLER, P. J.,
BROWN and GOSS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**October 18, 2018**

# In the Court of Appeals of Georgia

A18A1388. RCO LEGAL, P.S., INC. et al. v. JOHNSON.

MILLER, Presiding Judge.

Larry W. Johnson sued his former employer, RCO Legal, P.S., Inc. ("RCO"), as well as various persons associated with the firm, alleging that they defamed him. RCO filed a motion to dismiss or strike Johnson's complaint pursuant to OCGA § 9-11-11.1, which is Georgia's anti-SLAPP statute.[1] Johnson also filed a motion to strike portions of an affidavit made by RCO's general counsel, James Galbraith, as well as exhibits attached to that affidavit. The trial court denied RCO's motion to dismiss

---

[1] "Georgia's anti-SLAPP [strategic lawsuits against public participation] statute is intended to protect persons exercising their rights to free speech and to petition." *Jubilee Dev. Partners v. Strategic Jubilee Holdings*, 344 Ga. App. 204, 206 (809 SE2d 542) (2018).

Johnson's complaint, and also granted Johnson's motion to strike. RCO, James Galbraith, Stephen Routh, Janaya Carter, and Lori McGowan now appeal.

After a thorough review of the record, we determine that the trial court erred in granting Johnson's motion to strike the Galbraith affidavit without considering circumstantial evidence of authenticity of the attached exhibits. We also conclude that, although the trial court properly denied the appellants' motion to dismiss Johnson's complaint, Johnson's allegation of defamation stemming from RCO's summary judgment motion during arbitration proceedings, as well as communications to RCO's human resources director, should have both been struck from the complaint because neither would have supported a claim for defamation. Thus, we affirm in part, vacate in part, and remand this case with direction.

"We review de novo the trial court's denial of [a]ppellants' motion to dismiss. In reviewing the trial court's order, we construe the pleadings in the light most favorable to the plaintiff with any doubts resolved in the plaintiff's favor." (Citations omitted.) *Jubilee Dev. Partners v. Strategic Jubilee Holdings*, 344 Ga. App. 204 (809 SE2d 542) (2018).

RCO is a Washington-based law firm that provides mortgage default services. In June 2013, RCO hired Johnson as the vice president for the southeast region, and

2

he was to co-manage RCO's southeast region client files with his then-law partner, Joel Freedman. Johnson and Freedman maintained a separate law firm ("J&F"), with its own escrow accounts, assets and obligations. According to Johnson's employment agreement with RCO, Johnson was due to receive a severance payment of 36 months' salary, provided that he was terminated without cause. James Galbraith is RCO's general counsel; Stephen Routh is an RCO shareholder and founding partner; Janaya Carter is RCO's managing shareholder; and Lori McGowan is senior counsel with the firm.

Underlying Johnson's complaint is a foreclosure sale on property which belonged to Luther Carl Murray. J&F conducted that sale in April 2013, and the sale yielded $76,602.89 in excess funds, payable to Mr. Murray. J&F mailed a letter to Mr. Murray notifying him of the excess funds, but he did not respond. J&F then mailed another letter to Mr. Murray, along with a check for the excess funds, to a different address which a private investigator had found. Once again, Mr. Murray did not respond.

J&F then had a private investigator visit Mr. Murray, who lived with his mother. The investigator brought a check for the excess funds, as well as a "Release and Hold Harmless Agreement" so that Mr. Murray could receive the funds. After the

investigator explained the purpose of his visit, Mr. Murray stated that he did not want the check, and that the investigator's client should keep it. Mr. Murray's mother testified, "[h]e didn't mean that." Although the investigator left his contact information, neither Mr. Murray nor his mother contacted him. Johnson also averred that he had a conversation with Mr. Murray, during which Mr. Murray stated that he did not want the excess funds, and that Johnson should keep them. When Mr. Murray's mother was deposed in 2017, she testified that an envelope with a check came to the home in 2014, and that Mr. Murray had received it but never opened it.

In April 2015, Johnson had the check reissued, and the named payees were "Luther Carl Murray and Johnson & Freedman, LLC." As Johnson had initially instructed that the payees be named in the alternative, he changed the "and" to "or," initialed this change, and then deposited the check into his personal bank account. Johnson later paid that money to J&F, and Freedman put the money into J&F's escrow account. In July 2015, J&F sought the counsel of another firm regarding where to direct the funds. That firm sent Mr. Murray a letter informing him that J&F was holding the excess funds, which they intended to turn over to the State, and advising him that he had 60 days to claim the funds from J&F. With no response from

Mr. Murray, J&F filed an unclaimed property report with the Georgia Department of Revenue, and issued a check to the Department in the amount of the excess funds.

In September 2015, RCO terminated Johnson's employment "for cause," based partly on alleged mismanagement of the southeast region, and misuse and misappropriation of company resources. The letter informed Johnson that because he was being terminated for cause, i.e., "theft, dishonesty, fraud, gross negligence or willful misconduct in the performance of [his] assigned duties," he was not eligible for any severance payment. Johnson filed an arbitration claim against RCO in Washington State, and RCO filed Bar complaints against Johnson in Georgia, North Carolina, and Tennessee.[2]

Johnson ultimately requested the Department of Revenue to reimburse him the excess funds, and the Department issued a check in the amount of the excess funds, to "Johnson & Freedman LLC[,] Attn Larry W Johnson." After Johnson filed a complaint for declaratory judgment in the Columbia County Superior Court, that court determined that Mr. Murray had surrendered his claim to the excess funds, and that JF Legal (formerly J&F) was entitled to the funds.

---

[2] RCO claims that Johnson also misappropriated and converted other funds.

5

In 2017, Johnson filed a complaint against the appellants in DeKalb County, alleging that the defendants committed slander and libel[3] under OCGA § 51-5-1 et seq. Specifically, he complained of the following alleged acts and statements pertaining to his handling of the excess funds: (1) RCO's summary judgment motion in the arbitration proceeding, in which RCO claimed that Johnson committed theft when he deposited the excess funds into his personal bank account; (2) theft accusations that Galbraith and Routh made by telephone to in-house counsel for the Federal National Mortgage Association ("Fannie Mae"), as well as in other similar calls; (3) verbal and written theft accusations by RCO (and Galbraith and/or Carter) to McGowan and RCO's director of human resources; and (4) theft accusations by McGowan to an RCO associate attorney and Johnson's former administrative assistant.[4]

---

[3] We note that "the requirements for slander per se apply to libel per se because . . . the definition of slander in Georgia has been incorporated into the definition of libel." *Cottrell v. Smith*, 299 Ga. 517, 524 (II) (A) (788 SE2d 772) (2016).

[4] In his amended complaint, Johnson indicates that he is not basing his defamation claims on the filing of the Bar grievance documents. We also note that the State Bar of Georgia dismissed the grievance filed against Johnson.

RCO filed a motion to dismiss or strike, arguing that Johnson's claim arose out of communications that are protected by the anti-SLAPP statute.[5] Johnson then filed a motion to strike portions of Galbraith's affidavit, and all the exhibits attached to that exhibit. After a hearing, the trial court ruled that RCO had not met its burden of authenticating the exhibits attached to Galbraith's affidavit, and the trial court therefore granted Johnson's motion. As to the appellants' motion to dismiss, the trial court found that although the alleged communications fell within the scope of the anti-SLAPP statute, Johnson had demonstrated a probability of prevailing on his defamation claim. The trial court therefore denied the appellants' motion, and this appeal followed.

1. First, the appellants contend that the trial court erred in granting Johnson's motion to strike portions of the Galbraith affidavit because it ignored circumstantial evidence of authenticity for the attached exhibits.[6] We agree.

_____

[5] The appellees also moved to strike the affidavit of Thomas Fruit, an investigator whose services Johnson had used. The trial court denied that motion, but we do not address that decision because RCO does not enumerate it as error. Although the appellants challenge the affidavit in their reply brief, "this Court will not consider arguments raised for the first time in a reply brief." (Citation omitted.) *Barron v. Wells Fargo Bank*, 332 Ga. App. 180, 187 (4) (769 SE2d 830) (2015).

[6] In their appellate brief, the appellants allege that Johnson also misappropriated client funds and funds belonging to third parties. The appellants

"We review a trial court's decision on a motion to strike only for an abuse of discretion." (Citation omitted.) *Hayward v. The Kroger Co.*, 317 Ga. App. 795, 797 (1) (733 SE2d 7) (2012). Nevertheless, "while the abuse-of-discretion standard presupposes a range of possible conclusions that can be reached by a trial court with regard to a particular evidentiary issue, it does not permit a clear error of judgment or the application of the wrong legal standard." (Citation omitted.) *Koules v. SP5 Atlantic Retail Ventures*, 330 Ga. App. 282, 285-286 (2) (767 SE2d 40) (2014).

Under Georgia's Evidence Code, "authentication or identification as a condition precedent to admissibility shall be satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." OCGA § 24-9-901 (a). Thus, "'[a]uthentic' does not mean that the document is a legally valid or enforceable instrument; authenticity is merely a matter of identification, or showing that this writing is the one in question." (Citation and punctuation omitted.) *Koules*, supra, 330 Ga. App. at 286 (2). "Once that prima facie case is established, the evidence is admitted and the ultimate question of authenticity is decided by the

describe these allegations at length, and claim that the trial court "erred by considering only the Luther Murray situation." The trial court did not err in this regard because Johnson's defamation claims were specifically based on the theft allegations as they concerned the excess funds that had been due to Mr. Murray.

8

factfinder." (Citation and punctuation omitted.) *Fed. Nat. Mtg. Assn. BR-027 v. Harris*, 343 Ga. App. 295, 299 (1) (807 SE2d 75) (2017). A proffering party may authenticate documents through "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances." OCGA § 24-9-901 (b) (4).

Here, Galbraith filed an affidavit, attaching 12 exhibits, comprised of copies of e-mails, checks, bank receipts, ledgers, and letters.[7] Many of the documents bear company logos, letterheads, telephone and facsimile numbers, e-mail addresses and legal disclaimers. The trial court's order does not reflect that it considered the contents, subject or appearance of any of the exhibits. Rather, the trial court ruled that "pre-discovery evidence" did not provide "the necessary circumstantial context to determine authenticity," and it then struck paragraphs of Galbraith's affidavit on the basis that he had not laid a foundation for the admission of the exhibits.

At the hearing, however, the appellants argued that many of the e-mails were retrieved from RCO's server, because they had been stored there while Johnson worked for RCO. Also, some of the exhibits attached to the Galbraith affidavit appear

---

[7] In the trial court, Johnson conceded that paragraphs 1-8, as well as paragraph 36 and 38 of the affidavit were admissible or potentially admissible, but he objected to the admissibility of the remaining paragraphs of the affidavit.

consistent with other evidence that was submitted to the trial court. For instance, J&F's attorney, Charles Pollack, averred that J&F engaged his firm's services in July 2015, regarding the excess funds. The exhibits include e-mails with dates in July 2015, sent to and from law firm addresses, containing exchanges among "Charles I. Pollack," "Larry W. Johnson," and "Joel A. Freedman," apparently concerning the excess funds. Another exhibit features a copy of a check which is substantially the same as one that Johnson also submitted to the trial court.

Thus, there were indeed circumstances that the trial court should have considered, along with the documents' distinctive characteristics, to determine authenticity.[8] *Koules*, supra, 330 Ga. App. at 287-288 (2) (where counsel argued that documents were produced by the opposing party in discovery, "the trial court should have considered the contents, appearance, and substance of each document to determine whether a reasonable juror could find the document was authentic under the applicable standard."); *Nyankojo v. North Star Capital Acquisition*, 298 Ga. App.

---

[8] We note that a print-out of an e-mail is not self-authenticating under Georgia law. *Koules*, supra, 330 Ga. App. at 287 (2). Compare OCGA § 24-9-902 (list of self-authenticating evidence).

10

6, 8 (679 SE2d 57) (2009).[9] Thus, we vacate the trial court's order granting Johnson's motion to strike. See *Koules*, supra, 330 Ga. App. at 288 (2). On remand, the trial court should first determine the admissibility of the documents attached to the Galbraith affidavit, before deciding whether any portions of the affidavit and exhibits should be struck.

2. Next, the appellants argue that the trial court erred in denying their motion to dismiss or strike Johnson's complaint because accusations that Johnson committed a theft of Mr. Murray's funds were both true and privileged. We conclude that the trial court did not err in denying the motion, but we further hold that the allegations of defamation based on RCO's summary judgment motion, as well as communications to RCO's human resources director, should have been struck from the complaint.

*(a) Georgia's anti-SLAPP statute*

---

[9] Johnson argues that we should affirm the trial court's order because all the exhibits violate the best evidence rule and contain hearsay. The trial court did not rule on these issues, and we cannot address them in the first instance. *State v. Wood*, 338 Ga. App. 181, 188 (4), n.4 (790 SE2d 84) (2016) (given that admission of evidence is within the discretion of the trial court, appellate court could not determine evidentiary issue in the first instance).

The General Assembly enacted the anti-SLAPP statute to encourage Georgians to participate "in matters of public significance and public interest through the exercise of their constitutional rights of petition and freedom of speech." OCGA § 9-11.11.1 (a). Thus, the anti-SLAPP statute provides protection for claims

> against a person or entity arising from any act of such person or entity which could reasonably be construed as an act in furtherance of the person's or entity's right of petition or free speech under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern.

OCGA § 9-11-11.1 (b) (1). As is pertinent to this case, these acts include:

> (1) Any written or oral statement or writing or petition made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; [or]

> (2) Any written or oral statement or writing or petition made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law.

OCGA § 9-11-11.1 (c) (1) - (2). A claim arising from such an act is subject to a motion to strike, "unless the court determines that the nonmoving party has

established that there is a probability that the nonmoving party will prevail on the claim." (Emphasis supplied.) OCGA § 9-11-11.1 (b) (1).

Thus, in analyzing whether a complaint is subject to being struck under the anti-SLAPP statute, we employ a two-step process. We must first determine whether Johnson's defamation claim arose from acts which "could reasonably be construed" as either of the two types of conduct enumerated above. If so, "[t]he burden then shifts to [Johnson] to demonstrate that there is a probability that []he will prevail on h[is] claims at trial." *Neff v. McGee*, 346 Ga. App. 522, 525 (816 SE2d 486) (2018).[10]

---

[10] This "probability-of-prevailing" standard became a part of Georgia's anti-SLAPP statute when it was amended in 2016, *Neff*, supra, 346 Ga. App. at 524, n.2, mirroring the standard in California's anti-SLAPP statute. Compare Cal. Code Civ. Proc. § 425.16 (b) (1). California's interpretation and application of this "probability-of-prevailing" standard, which we find persuasive, are as follows:

To satisfy the second prong, a plaintiff responding to an anti-SLAPP motion must state and substantiate a legally sufficient claim. Put another way, the plaintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited. . . . [W]e neither weigh credibility, nor compare the weight of the evidence. Rather, we accept as true the evidence favorable to the plaintiff . . . and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law.

13

In determining whether Johnson's claim was subject to a motion to dismiss or strike, we consider "the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based." OCGA § 9-11-11.1 (b) (2). We also remain mindful of the General Assembly's directive to construe the statute "broadly" to accomplish its declarations. OCGA § 9-11-11.1 (a).

*(b) Whether appellants' conduct was in furtherance of the covered right*

Here, the trial court found that, when construing the statute broadly, all the allegations of theft against Johnson could reasonably be construed as statements made in connection with official proceedings, specifically, the State Bar's review of the Bar grievance, the ongoing arbitration between RCO and Johnson, or an apparent Department of Justice investigation of J&F. The trial court's ruling in this regard was correct.

First, "issues before the State Bar involving conduct of attorneys are official proceedings authorized by law." (Punctuation omitted.) *Jefferson v. Stripling*, 316 Ga. App. 197, 200 (1) (728 SE2d 826) (2012). We determine that the arbitration was also an official proceeding for purposes of the statute. See, e.g., *Green v. Flanagan*, 317

---

(Citations and punctuation omitted.) *Oasis West Realty, LLC v. Goldman*, 250 P3d 1115, 1120 (Cal. 2011).

14

Ga. App. 152, 155 (1) (730 SE2d 161) (2012) (characterizing arbitration as an alternative to a judicial proceeding); *Lovett v. Capital Principles*, 300 Ga. App. 799, 801 (686 SE2d 411) (2009) (Fulton County School Board's review of issue was an official proceeding authorized by law under the anti-SLAPP statute) (physical precedent only). Having reviewed the record, we determine that the theft allegations made in RCO's summary judgment motion in the arbitration proceeding, the supposed theft allegations made to Fannie Mae's counsel, and those made among RCO's staff, all fell within the ambit of the statute as acts which could reasonably be construed as statements, writings, or petitions made before or in connection with an issue under consideration or review by an executive body, or an official proceeding authorized by law.[11]

---

[11] The record shows as follows: RCO's director of human resources testified that Galbraith told her about a Bar complaint. McGowan testified, "I think it's pretty fairly well known amongst the attorneys who worked together for a long time that there was litigation between Mr. Johnson and RCO with regard to his termination" and "that's the context in which it's been discussed." When Johnson e-mailed Susan Shaw, an associate attorney at RCO, requesting an affidavit pertaining to the arbitration, Shaw responded that she had "bec[o]me aware of some of the information/background." In an e-mail, Fannie Mae's counsel told Johnson that they were "made aware of the pending arbitration between the parties." Although Johnson's former administrative assistant testified that McGowan had told her that Johnson had deposited Mr. Murray's funds without his permission, this administrative assistant also handled Department of Justice subpoenas directed to J&F, and there was discussion among the staff about "what to do" with them.

15

*(c) Whether Johnson demonstrated a probability of prevailing on his claims.*

We now examine whether Johnson demonstrated a "probability" of prevailing on his various defamation claims. "To establish a cause of action for defamation, a plaintiff must submit evidence of (1) a false and defamatory statement about himself; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special damages or defamatory words 'injurious on their face.'" (Citation omitted). *Chaney v. Harrison & Lynam, LLC*, 308 Ga. App. 808, 811 (1) (708 SE2d 672) (2011).

Construing the pleadings in the light most favorable to Johnson, and accepting as true the evidence favorable to him, we first find that Johnson has made a prima facie showing of the first element of defamation — that the allegations that he committed theft with regards to the excess funds were false and defamatory. Johnson's pleadings and affidavits show that despite repeated attempts by J&F and Johnson, Mr. Murray never attempted to cash the check for the excess funds, explained that he did not want the money, and also stated that Johnson could keep the funds. See OCGA § 16-8-10 (2) - (3) (a person who acts "under an honest claim of right to the property or service involved," or "under a right to acquire or dispose of

16

the property as he or she did" does not commit theft); *Cincinnati Ins. Co. v. Tire Master of Thomaston*, 183 Ga. App. 64, 65 (357 SE2d 812) (1987); *Cottrell v. Smith*, 299 Ga. 517, 524 (II) (A) (788 SE2d 772) (2016) ("imputing to another a crime punishable by law," constitutes defamation per se) (punctuation omitted). Johnson has also made a prima facie showing of damages. See OCGA § 51-5-4 (a) (1), (b) (when one commits slander by imputing to another a crime punishable by law, "damage is inferred").

Thus, we turn to whether Johnson has made a prima facie showing on the remaining two elements of his defamation claim — an unprivileged communication to a third party, and fault by the appellants amounting at least to negligence. In doing so, we highlight that "[c]ommunications which are afforded an absolute privilege cannot form the basis of a defamation action, regardless of the falsity of the statements or the speaker's malicious intent; conditionally privileged statements, on the other hand, are actionable upon a showing of malice." (Citation omitted.) *Renton v. Watson*, 319 Ga. App. 896, 900 (2) (739 SE2d 19) (2013).

(i) *Theft allegations in RCO's summary judgment motion in the arbitration proceeding were subject to absolute privilege.*

17

OCGA § 51-5-8 extends absolute privilege to "[a]ll charges, allegations, and averments contained in regular pleadings filed in a court of competent jurisdiction, which are pertinent and material to the relief sought, whether legally sufficient to obtain it or not . . . . However false and malicious such charges, allegations, and averments may be, they shall not be deemed libelous." See also *Simmons v. Futral*, 262 Ga. App. 838, 839 (586 SE2d 732) (2003). "Absolute privilege is based upon a public policy determination that the importance of one's ability to be free from restraint when engaged in legal processes outweighs a defamed party's right to seek legal redress." *Saye v. Deloitte & Touche*, 295 Ga. App. 128, 131 (1) (a) (670 SE2d 818) (2008). Thus, "we have generally described the coverage of the privilege to include . . . acts of legal process." (Citations and punctuation omitted.) *Williams v. Stepler*, 227 Ga. App. 591, 595 (3) (490 SE2d 167) (1997).

We find that RCO's allegations in its summary judgment motion were absolutely privileged and could not form the basis of a defamation claim. Here, RCO filed this pleading in an ongoing arbitration before the American Arbitration Association, following Johnson's claim for money damages from RCO. For purposes of the arbitration, the parties were deposed, conducted discovery, and submitted various exhibits to the arbitrator for his consideration, and the arbitrator was tasked

18

with ruling on whether RCO was entitled to terminate Johnson with cause. See *Green*, supra, 317 Ga. App. at 155 (1) (analogizing an arbitration to a quasi-judicial proceeding).[12] Compare *Davis v. Shavers*, 269 Ga. 75, 76 (495 SE2d 23) (1998) (absolute privilege did not apply to recall application against elected official because procedure prohibited discovery and evidentiary hearings, and it did not involve determining the truth of the defamatory statements in the application). Because the allegations in RCO's summary judgment motion were absolutely privileged, Johnson did not demonstrate a probability of succeeding on a defamation claim based on RCO's summary judgment motion. *Skoglund v. Durham*, 233 Ga. App. 158, 161 (b) (502 SE2d 814) (1998) (absolute privilege extended to statement contained in a "Request to Investigate" filed with the Georgia Real Estate Commission) (physical precedent only); *Cox v. Brazo*, 165 Ga. App. 888, 889 (4) (303 SE2d 471) (1983) (extending absolute privilege to statements made to the Employment Security Agency), aff'd, 251 Ga. 491 (1983); *Watkins v. Laser/Print-Atlanta, Inc.*, 183 Ga.

---

[12] See also *W. Mass. Blasting Corp. v. Metro. & Cas. Ins. Co.*, 783 A2d 398, 403, n.3 (R.I. 2001) ("statements made in quasi-judicial proceedings such as arbitrations shall be privileged against suits for defamation."); *Bushell v. Caterpillar, Inc.*, 683 NE2d 1286, 1289 (Ill. App. Ct. 1997) ("arbitration proceedings constituted quasi-judicial proceedings, and therefore defendants [were] absolutely immune from suit for communications made in plaintiff's arbitration hearing.").

19

App. 172, 173 (2) (358 SE2d 477) (1987) (extending the privilege to affidavit for arrest warrant and separation notice submitted to the Department of Labor). Thus, insofar as Johnson relied on RCO's summary judgment motion as a basis for his defamation claim, this allegation should have been struck from the complaint.[13]

> (ii) *Statements made to Fannie Mae's counsel and the Wider Mortgage Industry*

The appellants argue that the trial court erred in ruling that Johnson demonstrated a probability of succeeding on a defamation claim based on theft accusations allegedly made to Fannie Mae's counsel. We discern no error.

In his complaint, Johnson claimed that Galbraith made the same theft accusations from the summary judgment motion to counsel at Fannie Mae, as well as others in the mortgage industry. First, Johnson has made a prima facie showing that

---

[13] *Emory Univ. v. Metro Atlanta Task Force for the Homeless*, 320 Ga. App. 442, 444 (1) (740 SE2d 219) (2013) ("where a complaint asserts multiple claims and allegations, only those claims that are based on an act that falls under the scope of the anti-SLAPP statute are afforded the procedural protections of the statute . . . ."); *Baral v. Schnitt*, 376 P3d 604, 615-616 (II) (C) (Cal. 2016) ("an anti-SLAPP motion, like a conventional motion to strike, may be used to attack parts of a count as pleaded." . . . "Thus, in cases involving allegations of both protected and unprotected activity, the plaintiff is required to establish a probability of prevailing on any claim for relief based on allegations of protected activity. Unless the plaintiff can do so, the claim and its corresponding allegations must be stricken.").

the theft allegations were communicated to Fannie Mae's counsel via a telephone call.[14] *Saye*, supra, 295 Ga. App. at 133 (1) (b) (publication is generally achieved by "communicating a defamatory statement to anyone other than the person being defamed."). With regards to privilege, we reject the appellants' contention that these communications were subject to absolute privilege as "[c]ommunications related to, preparatory to, or in anticipation of litigation." The appellants advance this argument on the basis that California law recognizes such a privilege. But California has a specific statute that embodies a "litigation privilege," *Neville v. Chudacoff*, 160 Cal. App. 4th 1255, 1262 (Cal. Ct. App. 2008), and Georgia does not.

[14] There is ambiguity as to precisely what Routh (RCO's founding partner) and Galbraith said to Fannie Mae's counsel. While being deposed, Routh was asked about a call concerning "misconduct on Mr. Johnson's part," and Routh confirmed that such a conversation occurred with him, Galbraith, and Fannie Mae's counsel. However, when Routh was asked about what was said in the call, counsel did not allow him to answer. Although Johnson has not presented evidence of the statement(s) communicated to Fannie Mae's counsel, this is not fatal to his claim at this juncture. The filing of a motion to dismiss under the anti-SLAPP statute stays all discovery. OCGA § 9-11-11.1 (1) (d). Again, Johnson need only state and substantiate a legally sufficient claim, and we construe the pleadings in the light most favorable to Johnson as the nonmovant, with any doubts resolved in his favor. It is possible that, with additional discovery, Johnson can produce evidence of the statement(s). See *Renton*, supra, 319 Ga. App. at 902 (2) (plaintiff's broad and conclusory allegation that defendant made "false" statements "to third parties without privilege" was not fatal to defamation claim at the motion-to-dismiss stage). For this reason, we also reject the appellants' suggestion that their statements were conditionally privileged as "fair and honest reports of court proceedings."

The question, therefore, is whether the statements were conditionally privileged under OCGA § 51-5-7. In an action for slander or libel, a defense of conditional privilege requires (1) good faith; (2) an interest to be upheld; (3) a statement properly limited in its scope and occasion; and (4) publication to proper persons. *Smith v. DiFrancesco*, 341 Ga. App. 786, 790 (2) (802 SE2d 69) (2017). "The absence of any one or more of these constituent elements will, as a general rule, prevent the party from relying on the privilege." (Citation omitted.) *Dominy v. Shumpert*, 235 Ga. App. 500, 504-505 (2) (510 SE2d 81) (1998). "The question of conditional privilege is typically for the jury." (Citation omitted.) *Smith*, supra, 341 Ga. App. at 790 (2).

Here, Johnson pleaded and averred that Routh and Galbraith did not relay theft allegations to Fannie Mae's counsel in good faith, but rather, in an attempt to assassinate his character, given that the statements were not made in connection with any Bar grievance or investigation, and because Routh and Galbraith were not offering Fannie Mae any legal advice. The appellants' evidence does not defeat Johnson's claim as a matter of law. Indeed, RCO's pleadings and affidavits do not evince any explanation of why Fannie Mae's attorneys were "proper persons" to whom they needed to relay any theft allegations against Johnson. Although RCO argued that it was advised to "disclose or report [Johnson's] misconduct to affected

22

clients," the appellants have never claimed that Routh and Galbraith communicated the allegations to Fannie Mae's counsel in an attorney-client context. Compare *Saye*, 295 Ga. App. at 132 (1) (a) (extending conditional privilege to communications between an accountant and its audit client). See also OCGA § 51-5-7 (extending conditional privilege to "[s]tatements made in good faith in the performance of a legal or moral private duty."). Accordingly, the trial court correctly found that Johnson made a prima facie showing that the communications to Fannie Mae's counsel and others in the mortgage industry were not properly limited so as to be conditionally privileged.[15] Johnson also made a prima facie showing of fault, amounting to at least negligence, because malice is inferred where the slander per se is actionable and the utterance is not privileged. *Duchess Chenilles, Inc. v. Masters*, 84 Ga. App. 822, 829 (4) (67 SE2d 600) (1951); OCGA § 51-5-5.[16] Thus, when we construe the pleadings

_____

[15] The trial court noted that there was no evidence that Fannie Mae was RCO's client.

[16] The appellants argue that this case must be remanded because the trial court did not assess the element of fault. The trial court did, however, address inferred malice. There was no dispute in this case that Johnson is a private figure, and thus, Johnson would have only been required to make a showing that the appellants acted with ordinary negligence. *Riddle v. Golden Isle Broadcasting*, 275 Ga. App. 701, 703 (1) (621 SE2d 822) (2005). Given the trial court's implicit finding of inferred malice, we are not persuaded by the appellants' argument that Johnson adduced no evidence of fault.

23

in the light most favorable to Johnson, we conclude that he demonstrated a probability of prevailing on his defamation claim as it pertained to the allegations regarding defamatory communications to Fannie Mae's counsel.

*(iii) Law firm communications.*

We now examine the defamation claim insofar as it stems from the appellants' communication of theft accusations to RCO's director of human resources, senior counsel, a former RCO associate attorney, and Johnson's former administrative assistant. The appellants contend that Johnson's claim must fail in this regard because these communications were all intracorporate and therefore were not published. We find that this exception applies only to the statements made to RCO's human resources director, and that Johnson otherwise demonstrated a probability of prevailing on his defamation claim based on these law firm communications.

As discussed above, publication of defamatory information generally occurs when it is communicated to anyone other than the person being defamed. *Saye*, supra, 295 Ga. App. at 133. However,

> Georgia courts have further refined the broad definition of publication
> so that, when the communication is intracorporate, or between members

24

of unincorporated groups or associations, and is heard by one who, because of his/her duty or authority has reason to receive information, there is no publication of the allegedly slanderous material, and without publication, there is no cause of action for slander.

(Citation omitted.) *Fink v. Dodd*, 286 Ga. App. 363, 367 (1) (b) (649 SE2d 359) (2007). Importantly, though, "not all intracorporate statements come within the exception, only those statements received by one who because of his duty or authority has reason to receive the information." *Scouten v. Amerisave Mtg. Corp.*, 283 Ga. 72, 73 (1) (656 SE2d 820) (2008).

The appellants argue that Galbraith (RCO's general counsel) shared evidence from the arbitration with the director of human resources because she was responsible for managing human relations for the firm. To the extent that theft allegations were relayed to the director of human resources, we agree that her position would have given her reason to receive that information. This is particularly so because Johnson was terminated for cause, i.e., "theft, dishonesty, fraud, gross negligence or willful misconduct," and he then filed an arbitration claim against RCO based on this termination. See *Kurtz v. Williams*, 188 Ga. App. 14, 15 (3) (371 SE2d 878) (1988) ("If a personnel report is written by a supervisor who has the duty to write the report and it is sent to the keeper of personnel records, there is no publication of that

report."). Thus, these statements were not published and would not have formed the basis for Johnson's defamation claim.

As it pertains to McGowan (senior counsel), a former associate attorney at RCO, and Johnson's former administrative assistant, we cannot say, as a matter of law, that any of these persons were subject to the intracorporate exception. There is no evidence that McGowan supervised or managed Johnson, or that she was involved in his termination, any investigation of Johnson, or the filing of any Bar grievance against him. Indeed, McGowan testified that she asked for a copy of the Bar complaint because she was "curious about the ongoing litigation" from a "litigator's perspective." Although McGowan knew that subpoenas were coming from the Department of Justice to J&F, this does not establish that she had reason to be advised of theft allegations against Johnson. McGowan's own testimony shows that when the administrative assistant informed her of the subpoenas, she directed her to speak with the managing shareholder about where to direct them, and she was "out of it at that point." Compare *Terrell v. Holmes*, 226 Ga. App. 341, 343 (1) (487 SE2d 6) (1997) (vice president of academic affairs had reason to be advised of plaintiff's alleged acts of sexual harassment in order to provide input regarding the appropriate

26

action to be taken against plaintiff, and because he was responsible for school's sexual harassment policy).

Similarly, we do not find that either Johnson's former administrative assistant or the associate attorney had any reason to be informed of theft accusations. Insofar as the administrative assistant was in possession of the subpoenas, the evidence shows that she merely needed to know where to direct them.[17] And as with the communications to Fannie Mae's counsel, the trial court correctly found that Johnson made a prima facie showing that these communications were not limited so as to be conditionally privileged.[18] Thus, Johnson demonstrated a probability that he would prevail on his defamation claim based on these law firm communications.

In sum, the trial court erred in striking portions of the Galbraith affidavit and the attached exhibits without considering circumstantial evidence of the exhibits' authenticity, and the trial court should do so on remand. The trial court correctly denied the appellants' motion to dismiss Johnson's complaint, but Johnson could not

---

[17] The appellants argue that even if the intracorporate exception did not apply to these communications, they were subject to an attorney-client privilege. This argument is not meritorious because there is no evidence of any such relationship.

[18] As previously discussed, malice is inferred where the slander per se is actionable and the utterance is not privileged.

maintain any defamation action based on his allegations of slanderous statements in RCO's summary judgment motion or those made to RCO's director of human resources. Thus, these allegations should have been struck from the complaint.

*Judgment affirmed in part, vacated in part, and case remanded with direction. Brown and Goss, JJ., concur.*