**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 30, 2019**

# In the Court of Appeals of Georgia

A19A0807. STEEN-JORGENSEN v. HUFF.

RICKMAN, Judge.

Rebecca Steen-Jorgensen and her husband petitioned the Troup County Probate Court for the appointment of a guardian and/or conservator for her father, Robert Sydney Brown, Jr., who had been diagnosed with dementia. Toni Kay Huff, Jorgensen's step-sister, successfully intervened in the proceeding. After the probate court declined to exercise jurisdiction and dismissed the petition, Jorgensen appealed to the Superior Court of Troup County. Following an evidentiary hearing, the superior court also declined to exercise jurisdiction, based on its conclusion that North Carolina, where Robert Brown is currently living, was a more appropriate forum, and dismissed the petition. On appeal to this Court, Jorgensen contends that the trial court erred by issuing an order lacking specific findings of fact so as to allow meaningful

appellate review, declining to exercise jurisdiction, and admitting unauthenticated hearsay evidence. For reasons that follow, we vacate the superior court's order and remand the case with direction.

The record shows that Robert Brown lived in LaGrange, Georgia for almost 50 years. He and his first wife, Jorgensen's mother, got divorced in the 1990s, and he married his current wife, Deborah, in 2001. Robert and Deborah Brown lived together in LaGrange, Georgia from 1996 until 2017. Jorgensen is Robert Brown's only child. She grew up in LaGrange, Georgia, but her primary residence is in Florida. She is temporarily living in Charlotte, North Carolina to be near her father.[1] Huff is Deborah Brown's child from another marriage, and she lives near Charlotte, North Carolina.

During 2017, Deborah Brown's health began declining, and she needed assistance that family members could not provide. As a result, a decision was made to move her and her husband to a facility where she could get the help that she needed. It is not clear who made the decision that the Browns would move to North Carolina in 2017, but they ultimately moved to a facility that Huff had located, where they initially lived in an apartment in the assisted living section. After Robert Brown drove his golf cart off of the property and got lost on his way back, he was moved to

---

[1] Jorgensen has not lived in Georgia since approximately 1993 or 1994.

the memory care unit. Huff elected to move her mother into that unit too, but they do not share the same room.

No one informed Jorgensen about the fact that her father had been moved to North Carolina. Huff testified that Robert Brown told her not to mention it to Jorgensen because "she's a pain in the butt[,] and she makes a mess of everything." When Jorgensen heard a rumor that her father had been moved to North Carolina, she sought to confirm it, ultimately hiring a private investigator, who successfully located him several weeks later. She testified that she did not contact Huff to find out where her father was because she assumed that Huff would have told her if she knew he had moved.

When Jorgensen learned where her father was living, she went to visit him. While there, she discovered that he had created a power of attorney and an Advanced Directive for Health Care, and that Huff, as the alternate appointee under both documents, held his power of attorney and was serving as his health care agent. She testified that the nurse coordinator in her father's memory care unit told her that she could not give Jorgensen family member access to the facility (she was required to request entry for each visit) or provide her access to her father's medical records because she was not authorized under the paperwork the facility had been provided.

3

Jorgensen asked Huff about obtaining a card to access the facility and gaining access to medical records, but Huff has not provided either, apart from complying with discovery requests in this proceeding. Based on what she learned and what she observed at the facility, Jorgensen became concerned that Huff was not acting in her father's best interest but in the best interest of her mother and herself,[2] and she decided to file a petition for guardianship over her father.

Prior to 2017, Robert and Deborah Brown had discussed the possibility of moving to North Carolina. According to Jorgensen, her father told her in 2016 that he was not moving to North Carolina because his wife and Huff did not get along well enough for them to move. Huff, however, testified that the Browns had been planning to move to North Carolina for many years, had looked at several subdivisions, but could not find a house that they liked. As she was going through her mother's belongings, Huff found listing information for a house in Marvin, North Carolina and a house in Waxhaw, North Carolina, as well as a home purchase agreement for a house in Waxhaw. Jorgensen's counsel objected to the admission of

_____

[2] Huff testified that the funds held jointly by her mother and Robert Brown, as well as his pension and social security benefits, are being used to pay for the care received by her mother and Robert Brown. Her mother's pension benefits are going into her personal account, and are not being used to pay for care.

4

the purchase agreement on the ground of lack of foundation. The document was admitted over his objection.

The superior court concluded that jurisdiction was presumptively appropriate in Troup County, Georgia, but that North Carolina was a more appropriate forum to hear this particular case. The court therefore declined to exercise its jurisdiction and dismissed Jorgensen's petition.

1. Jorgensen contends that the trial court erred by issuing an order that lacks sufficient findings of fact to permit meaningful appellate review.

Article Two of the Georgia Uniform Adult Guardianship and Conservatorship Proceedings Jurisdiction Act, OCGA § 29-11-1 et seq., addresses the issues that may arise when it is unclear which of two or more states has jurisdiction over the imposition of a guardianship or conservatorship. See Radford, Ga. Guardianship and Conservatorship § 4:3 (2019). The Act creates a three-tiered approach to jurisdictional issues, and under that approach, "the state court that may have jurisdiction would be, in order of priority: 1) the court in the respondent's home state; 2) the court of a state with which the respondent has a significant connection; or 3)

a third state that is neither the home state nor a significant-connection state."[3] Id.; see OCGA § 29-11-12.

Thus, under the first tier, the ward's own "home state" has primary jurisdiction to appoint a guardian or conservator for the respondent. See OCGA § 29-11-12 (1); Radford, Ga. Guardianship and Conservatorship § 4:3. "Home state" is defined as

> the state in which the respondent was physically present, including any period of temporary absence, for at least six consecutive months immediately before the filing of a petition for a conservatorship order or the appointment of a guardian or, if none, the state in which the respondent was physically present, including any period of temporary absence, for at least six consecutive months ending within the six months prior to the filing of the petition.

OCGA § 29-11-2 (6).

The Act's second tier gives jurisdiction to a state with which the respondent has a "significant connection" under certain circumstances. See OCGA § 29-11-12 (2). A "significant-connection state" is defined as "a state, other than the home state, with which a respondent has a significant connection other than mere physical

---

[3] The Act uses the term "respondent" rather than "proposed ward" to describe the individual for whom the appointment of a guardian or conservator is sought. See OCGA § 29-11-2 (12).

6

presence and in which substantial evidence concerning the respondent is available."
OCGA § 29-11-2 (13); see also OCGA § 29-11-10. The "significant-connection
state" may have jurisdiction if the respondent has a home state but that state's court
has declined to exercise jurisdiction because another state is a more "appropriate
forum." See OCGA § 29-11-15 (a) ("A court of this state having jurisdiction under
[OCGA §] 29-11-12 to appoint a guardian or conservator may decline to exercise its
jurisdiction if it determines at any time that a court of another state is a more
appropriate forum."). To determine whether another state is a more appropriate
forum, the court

> shall consider all relevant factors, including: (1) Any expressed
> preference of the respondent; (2) Whether abuse, neglect, or exploitation
> of the respondent has occurred or is likely to occur and which state
> could best protect the respondent from the abuse, neglect, or
> exploitation; (3) The length of time the respondent was physically
> present in or was a legal resident of this or another state; (4) The
> distance of the respondent from the court in each state; (5) The financial
> circumstances of the respondent's estate; (6) The nature and location of
> the evidence; (7) The ability of the court in each state to decide the issue
> expeditiously and the procedures necessary to present evidence; (8) The
> familiarity of the court of each state with the facts and issues in the
> proceeding; and (9) If an appointment were made, the court's ability to
> monitor the conduct of the guardian or conservator.

OCGA § 29-11-15 (c).

If a court declines its jurisdiction under OCGA § 29-11-15 (a), the court should dismiss or stay the proceeding and, in so doing, may include any "just and proper" condition, including the condition that a petition for the appointment of a guardian be filed promptly in another state.[4] OCGA § 29-11-15 (b).

Here, the superior court initially found that Georgia was the home state for Robert Brown. That determination is undisputed. The trial court then concluded that North Carolina was a more appropriate forum and declined to exercise its jurisdiction. Jorgensen contends that the superior court's order is inadequate because the court did not address the factors it was required to consider before determining that another state was a more appropriate forum.

Although OCGA § 29-11-15 (c) does not expressly require specific findings on each factor, making such findings is a better practice. We therefore conclude that the trial court must at a minimum set out the essential reasoning that forms the basis for its exercise of discretion. See *In re Estate of Hanson*, ___ Ga. App. ___ (1) (Case

---

[4] The superior court noted that Huff filed a petition seeking a guardianship over Robert Brown in North Carolina after the probate court issued its final order dismissing Jorgensen's petition. North Carolina has also adopted a Uniform Adult Guardianship and Protective Proceedings Jurisdiction Act. See N.C.G.S.A. § 35B-1, et seq.

8

No. A19A1494; decided October 17, 2019) (when determining whether state is a "significant-connection state" under OCGA § 29-11-10, "trial court must set out upon the record the essential reasoning that forms the basis for its exercise of discretion"); see also *Wang v. Liu*, 292 Ga. 568, 570-571 (1) (740 SE2d 136) (2013) (trial court considering motion to dismiss an action under the doctrine of forum non conveniens is not required to make specific findings on each of the seven enumerated statutory factors in every case, although that would be a better practice, but trial court must "set out upon the record the essential reasoning that forms the basis for its exercise of discretion"). Without such a statement of the essential reasoning of the trial court, we cannot ascertain whether the trial court's decision was a reasoned and reasonable one in the light of the factors listed in OCGA § 29-11-15 (c). See *Wang*, 292 Ga. at 570-571; *In re Estate of Hanson*, ___ Ga. App. ___ (1).

In its order, the superior court set out the basic facts of the case, listed the nine factors set forth in OCGA § 29-11-15 (c), stated that it had considered them all, and concluded that North Carolina was a more appropriate forum. The court did not, however, apply the enumerated factors to the facts, indicate which factors supported

its decision, or state which factors (if any) it had disregarded as not relevant.[5] Under the circumstances, we cannot ascertain the superior court's essential reasoning, and meaningful appellate review is not possible. Accordingly, we vacate the superior court's order and remand for the superior court to make clear its reasoning under the factors set forth in OCGA § 29-11-15 (c). See *In re Estate of Hanson*, ___ Ga. App. ___ (1).

2. Jorgensen contends that the trial court erred by improperly declining to exercise jurisdiction under OCGA § 29-11-15 (a). In light of our decision in Division 1, we do not address this enumeration of error.

3. Jorgensen contends that the trial court erred by admitting unauthenticated hearsay evidence. She argues that the court should not have admitted Exhibit 3, the home purchase agreement, over her objection.

"A trial court's decision regarding the admission or exclusion of evidence is reviewed for an abuse of discretion." (Citation and punctuation omitted.) *Koules v. SP5 Atlantic Retail Ventures*, 330 Ga. App. 282, 285 (2) (767 SE2d 40) (2014). Generally, "a writing will not be admitted into evidence unless the offering party

---

[5] In addition, at the hearing, the superior court repeatedly referred to its decision-making process as merely a determination of the more convenient forum for the guardianship proceeding.

10

tenders proof of the authenticity or genuineness of the writing." (Citation and punctuation omitted.) *Jaycee Atlanta Dev. v. Providence Bank*, 330 Ga. App. 322, 325 (2) (765 SE2d 536) (2014). The requirement of authentication "shall be satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." OCGA § 24-9-901 (a). Thus, "authentic" does not mean that the document is a legally valid or enforceable instrument; authenticity is merely a matter of identification, or showing that this writing is the one in question." (Citation and punctuation omitted.) *RCO Legal, P.S. v. Johnson*, 347 Ga. App. 661, 664-665 (1) (820 SE2d 491) (2018).

Here, Exhibit 3 is entitled "Home Purchase Agreement" and the names Robert Brown and Deborah Brown are typed in as the buyers of a property in Waxhaw, North Carolina. Huff testified that she found the document in a file kept by the Browns. She testified that the Browns were working with a real estate agent in North Carolina, that she had looked at homes with them, and that she read Exhibit 3 before anyone signed it. Huff was not present when the Browns signed it, and she was not asked to identify any signatures on the document. She testified that the Browns never consummated the transaction because it was going to take too much time and work.

11

The question of whether Exhibit 3 is "authentic" is simply whether it is what its proponent claims, that is, a copy of a purchase agreement with Robert and Deborah Brown's names on it. Huff did not seek to admit Exhibit 3 as a binding contract executed by Robert Brown, but merely as proof that the Browns had considered purchasing real estate in North Carolina. Given Huff's testimony, the appearance of the document, and the fact that she found it in a file in the Brown's house with listing agreements for other property located in North Carolina, we find no abuse of discretion in the trial court admitting Exhibit 3 for that limited purpose. See OCGA § 24-9-901 (b) (1), (4) (proffering party may authenticate documents through "[t]estimony of a witness with knowledge that a matter is what it is claimed to be" or "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances").

Jorgensen also contends that Exhibit 3 is inadmissible hearsay. But Jorgensen did not assert a hearsay objection to Exhibit 3 during the hearing and has therefore waived that argument on appeal. See OCGA § 24-8-802; *Spirits, Inc. v. Patel*, 350

Ga. App. 153, 157 (2) (828 SE2d 381) (2019); *Metropolitan Atlanta Rapid Transit Auth. v. Morris*, 334 Ga. App. 565, 567 (1) (a) (i) (779 SE2d 726) (2015).

*Judgment vacated and remanded with direction. Miller, P. J., and Reese, J., concur.*