**FIRST DIVISION
BARNES, P. J.,
GOBEIL and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**October 7, 2024**

# In the Court of Appeals of Georgia

A24A0733. BOLEY v. A-1 HORTON'S MOVING SERVICE, INC. et al.

GOBEIL, Judge.

In this case, A-1 Horton's Moving Service, Inc. and Loretta Horton-Rodriguez, president of A-1 Horton's Moving Service, (collectively, "Plaintiffs") filed a complaint against Brendan Boley raising claims including defamation, libel, and slander after Boley wrote two negative reviews of Plaintiffs' moving business and posted them online. Boley moved to strike the lawsuit, asserting that it constituted a Strategic Lawsuit Against Public Participation ("SLAPP"), and therefore OCGA § 9-11-11.1, Georgia's anti-SLAPP statute, applied to strike the complaint. Boley now seeks review of the trial court's order denying in part his motion to strike, arguing that the trial court erred in (1) considering Loretta's affidavit as evidence and (2) finding

that Plaintiffs established a probability of prevailing on their claims. For the reasons set forth below, we affirm.

"We generally review a trial court's ruling on an anti-SLAPP motion to strike de novo, viewing the pleadings and affidavits submitted by the parties in the light most favorable to the plaintiff (as the non-moving party). We review a trial court's decision on discovery matters for a clear abuse of discretion." *PNC Financial Svcs. Group v. Gibson*, 317 Ga. App. 660, 661 (1) (901 SE2d 331) (2024) (citations and punctuation omitted).

So viewed, the record shows that Boley was a member of the military, and A-1 Horton's Moving Service was awarded a contract to handle part of Boley's relocation from North Carolina to Georgia in 2023. A-1 Horton's Moving Service had Boley's belongings in storage but was unable to arrange the release and delivery of his items as early as Boley desired. Boley hired his own movers and asked to retrieve his items from A-1 Horton's Moving Service on May 18, 2023. The parties disputed what time Boley was meant to arrive to pick up his belongings, and Boley was unsatisfied with the process he was required to undergo to get his items released to him. Specifically, Boley objected to a form he was asked to sign that would release A-1 Horton's Moving

Service from liability for damage to the belongings. Boley ultimately signed the form and got his belongings.

Later that day after retrieving his belongings, Boley posted a review on Yelp.com for Plaintiffs' business, stating:

> Military move: Loretta personally called my wife a liar, hung up the phone on me, and then tried to extort me by forcing me to waive liability for damage or wait 3 hours for them to account for all my items while I had movers waiting at $250/hr. AT ALL COST DO NOT USE THIS COMPANY OR LET THEM HOLD A GOVT CONTRACT.

Two days later, Boley posted another review on the Better Business Bureau website, stating (with minor edits for formatting/clarity):

> Avoid this company like the plague. Loretta the "President" is one of the most malicious and deceitful people I have ever met. She received my goods for a military move and couldn't deliver for 5 weeks after getting it. I found movers to pick it up in 2 days. She drug me along hoping I wouldn't get my own crew. She personally broke multiple [Department of Defense] DOD moving laws and regulations and attempted to hold my goods hostage. Called my wife a liar when 3rd parties verified our info we were debating. Hung up on me when she was mad that she forgot our pickup was at 9:30 and not 8am and realized. When I confronted her that the behavior was not professional, she admitted to hanging up "because she didn't want to hear my lies." They

aren't lies, the moving contractor over her has 9:30 on their recorded tapes. Didn't have my goods out for inspection upon arrival and wanted me to wait 2-3 hours to unload them — said I couldn't have my stuff without signing away all liability or even touch my goods. Has a color blind employee calling off good stickers that were green and yellow and got it wrong. Refused to let my moving crew load up MY goods until she spent 3 hours reading off stickers to try and manipulate me to sign away liability or lose money every hour while my crew sat. A-1 is under investigation from the DOD. I took my goods and paid for a move myself. Do not trust Loretta or A-1. I actually feel sorry for Loretta because I have never met someone so unhappy. Avoid the company like the plague.

On May 31, 2023, Plaintiffs sent a letter to Boley demanding that he remove the reviews, which he did not do. On July 25, Plaintiffs filed a complaint stating nine causes of action: (1) seeking injunctive relief (to remove the reviews and refrain from publishing additional statements); (2) defamation; (3) libel; (4) slander; (5) tortious interference with business relations; (6) injury to reputation; (7) intentional infliction of emotional distress; (8) seeking punitive damages; (9) seeking attorney fees. Boley moved to strike the lawsuit pursuant to OCGA § 9-11-11.1, Georgia's anti-SLAPP statute, arguing that the claims asserted against him arose from constitutionally

protected activity and Plaintiffs had failed to establish a probability that they would prevail on their claims.

After a hearing, the trial court granted in part and denied in part Boley's motion to strike, striking claims 5, 6, and 7, but allowing the defamation and related claims to proceed. Using the two-step analysis for evaluating anti-SLAPP motions to strike outlined in *Wilkes & McHugh, P.A. v. LTC Consulting, L.P.*, 306 Ga. 252, 261-263 (2) (b) (830 SE2d 119) (2019), the trial court first determined that Boley was engaged in a protected First Amendment activity when he wrote and posted the reviews (a finding Plaintiffs do not contest on appeal, so we do not discuss further).

In the second step of the analysis, the trial court considered whether Plaintiffs had established a probability that they will prevail on the action. The trial court found that Plaintiffs had made such a showing for their defamation, libel, and slander claims, and had not made such a showing for their tortious interference, injury to reputation, or intentional infliction of emotional distress claims. The court also awarded Plaintiffs attorney fees pursuant to OCGA § 9-11-11.1 (b.1) (which requires that attorney fees

be awarded to the prevailing party for this type of motion). Boley now appeals the denial-in-part.[1]

1. On appeal, Boley first contests the trial court's acceptance of Loretta's affidavit in its consideration of the complaint's factual basis. We discern no error.

Pursuant to OCGA § 9-11-11.1 (b) (1),

> [a] claim for relief against a person or entity arising from any act of such person or entity which could reasonably be construed as an act in furtherance of the person's or entity's right of petition or free speech under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern shall be subject to a motion to strike unless the court determines that the nonmoving party has established that there is a probability that the nonmoving party will prevail on the claim.

In making its determination regarding whether there is a probability that the plaintiff will prevail on the claim, "the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based[.]" Id. (b) (2).

---

[1] Although the trial court's order is not a final judgment, Boley was entitled to directly appeal the order pursuant to OCGA § 5-6-34 (a) (13).

Here, Loretta filed an affidavit with her response to Boley's motion to strike the complaint. Her affidavit stated that Boley's reviews were almost entirely untrue (conceding only two minor statements as true) and had caused damage to her business. Boley moved to strike her affidavit, arguing that it amounted to a "blanket denial" of the allegations in Boley's reviews. He also argued that her affidavit was in conflict with the allegations in her complaint, and should be stricken under the *Prophecy* rule, whereby self-contradictory testimony in a summary judgment proceeding is construed against the party-witness.[2] Here, the trial court noted Boley's objection to Loretta's affidavit and stated "[e]ven if [Boley] is correct that the [c]ourt must disregard the Affidavit of Loretta Horton-Rodriguez, the [c]ourt must accept as true the statements in the verified Complaint for purposes of evaluating the anti-SLAPP motion." Accordingly, the trial court based its ruling entirely on the contents of Boley's online reviews, finding that Boley's accusations that Loretta, the president of the company, had broken multiple DOD regulations and attempted to commit the crime of extortion could constitute defamation if proven to be untrue.

---

[2] *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) (1986).

The trial court's reliance on the allegations in the complaint was sound. Boley argues that, in a summary judgment setting, allegations in a complaint are insufficient for a nonmoving party to defeat summary judgment. However, in an anti-SLAPP motion-to-strike setting, the plaintiff must show only "that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Wilkes*, 306 Ga. at 262 (2) (b) (citation and punctuation omitted). "The plaintiff's evidence is accepted as true; the defendant's evidence is evaluated to determine if it defeats the plaintiff's showing as a matter of law." Id. (citation and punctuation omitted). Accordingly, the verified complaint, which can "serve[ ] as both pleading and evidence," is properly considered in an anti-SLAPP context. *BEA Systems, Inc. v. WebMethods, Inc.*, 265 Ga. App. 503, 504 (595 SE2d 87) (2004) (in an injunction context, the trial court must have "evidence before it upon which" to exercise its discretionary powers; verified complaint is sufficient to satisfy this requirement). Here, where Plaintiffs filed a verified complaint, the court did not err in considering it in its consideration of whether Plaintiffs made a "prima facie showing of facts" to sustain their action at this stage of the proceeding. And if the complaint was sufficient

to meet this burden (discussed below), Loretta's affidavit was immaterial to the trial court's ruling and Boley points to no reversible error.

2. Next, Boley asserts that the trial court erred in finding that Plaintiffs showed a probability that they could prevail on their action for defamation and the related claims.

As described above, the second step of the anti-SLAPP analysis requires the trial court to determine if the plaintiff "has established that there is a probability that the plaintiff will prevail on the claim." *Wilkes*, 306 Ga. at 262 (2) (b) (citation and punctuation omitted). To meet this burden, "the plaintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." Id. (quoting *Soukup v. Law Offices of Herbert Hafif*, 39 Cal. 4th 260 (46 Cal. Rptr. 3d 638, 139 P3d 30) (2006)[3]). Therefore, we look to the elements of defamation to determine whether Plaintiffs have met this standard.

---

[3] Because of similarities between Georgia's and California's anti-SLAPP statutes, "we may look to California case law … for guidance, especially decisions — such as the ones cited in this opinion — that employ the same kind of statutory analysis that we generally use." *Wilkes*, 306 Ga. at 257-258 (2).

> A cause of action for defamation consists of four elements: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm.

*Infinite Energy, Inc. v. Pardue*, 310 Ga. App. 355, 356 (1) (713 SE2d 456) (2011) (citation and punctuation omitted).[4]

The trial court found that Boley's accusations of extortion and violating DOD regulations could reasonably be interpreted to state or imply defamatory facts about Plaintiffs at least to the extent they would tend to injure the business, which can constitute defamation per se. See *Smith v. DiFrancesco*, 341 Ga. App. 786, 788 (1) (802 SE2d 69) (2017) ("Libel per se consists of a charge that one is guilty of a crime, dishonesty or immorality. Statements that tend to injure one in his trade or business also are libelous per se.") (citation and punctuation omitted).

Boley argues that his review stating that Loretta "tried to extort" him was merely a colorful way to describe facts that Plaintiffs do not dispute (that they required

---

[4] Because libel or slander are types of defamatory statements, libel and slander are considered under the same umbrella as defamation. See *RCO Legal, P.S., Inc. v. Johnson*, 347 Ga. App. 661, 663 n. 3, 668-669 (2) (c) (820 SE2d 491) (2018).

Boley to sign a liability waiver before releasing his belongings). Therefore, Boley concludes that it qualifies as opinion — not an assertion of fact that could underlie a defamation action. Boley provides examples of cases where courts have found a defendant's use of criminal language to be mere "lusty hyperbole" as opposed to actionable defamation. However, such examples are not from the anti-SLAPP context, where Plaintiffs' burden is quite low and where the trial court is examining the evidence only to determine if there is a prima facie claim. See, e. g., *Greenbelt Coop. Publishing Assn. v. Bresler*, 398 U. S. 6, 7-8 (90 SCt 1537, 26 LE2d 6) (1970) (reversing jury verdict rendered against newspaper publisher for printing articles describing public figure's negotiating position at City Council meetings as "blackmail"); *Mathis v. Cannon*, 276 Ga. 16, 17 (573 SE2d 376) (2002) (reversing grant of summary judgment to limited-purpose public figure who sued a citizen who referred to him as a "crook" and a "thief" on Internet bulletin board). We agree with the trial court that the statements Boley made in his reviews, if proven to be untrue, could amount to defamation per se such that it survives this stage of the proceeding.

11

Boley argues further that because there is no evidence that he made his statements negligently, Plaintiffs' defamation action cannot survive. See *American Civil Liberties Union, Inc. v. Zeh*, 312 Ga. 647, 650 (1) (b) (864 SE2d 422) (2021) ("A plaintiff who is a private figure must establish, as a matter of Georgia law, that the defendant published the allegedly defamatory statements with at least ordinary negligence."). He points to an affidavit attached to his anti-SLAPP motion in which he averred that he was told by a DOD Transportation Inspector that Plaintiffs had violated DOD moving regulations, which is why he included such accusations in his reviews and why his statements were not made negligently. However, at this stage of the proceeding, such investigation by Boley does not save his statements that Plaintiffs engaged in extortion or otherwise dishonest or immoral activity. And in any event, "malice is inferred where the slander per se is actionable and the utterance is not privileged." *RCO Legal, P.S., Inc. v. Johnson*, 347 Ga. App. 661, 672 (2) (c) (ii) (820 SE2d 491) (2018). Accordingly, we affirm the trial court's denial of Boley's motion to strike in this case.

*Judgment affirmed. Barnes, P. J., and Pipkin, J., concur.*